## NORTHWESTERN IMPROVEMENT COMPANY, a Corporation, v. OLIVER COUNTY, a Municipal Corporation.

### (164 N. W. 315.)

**Complaint — statutory form of — cause of action — description of plaintiff's estate — interest or lien — description of land.**

　　1. Under the statutory form of complaint set forth in § 8147 of the Compiled Laws, the complaint states facts sufficient to constitute a cause of action, so far as the description of plaintiff's estate is concerned, when the complaint shows that it "has an estate in, and interest in, the following described real property, situated in the above-named county and state, to wit: Mineral rights, assessed in Oliver county, North Dakota," and follows this with a detailed and itemized statement and description of the land, giving the section, township, and range.

**Board of equalization — adjournment — description of real estate — inserted in assessor's books — by county auditor thereafter — value — computing taxes — extends same on tax lists — notice to plaintiff — no opportunity to be heard — assessments void.**

　　2. Where the county auditor, after the adjournment of the board of equalization, inserts in the assessor's books a description of real property in the name of the plaintiff, and affixes a value thereto, computes the taxes thereon, extends the same on the tax list as taxes, advertises the land for sale for delinquent taxes, and sells the same at tax sale, all without notice to the plaintiff and without affording the plaintiff an opportunity to be heard on the assessment, such assessment is absolutely void.

**Assessments — defects in — jurisdictional — courts — relief.**

　　3. The defects in such assessment are of such a jurisdictional character that this court cannot afford relief under the provisions of § 2201 of the Compiled Laws.

Grantor — "mineral rights" reserved — reservation — interest in land — as-
sessable — against grantor — taxes — payment by grantee — does not re.
lieve grantor.

4. Where a grantor conveys land, reserving to itself the "mineral rights" as
set forth in· the opinion, such reservation is an interest in the land properly
asses..ble against the grantor, and the payment of taxes by the grantee does
not relieve the grantor from the duty of paying taxes on such reservations nor
discharge the grantor's taxable obligations.


Opinion filed August 23, 1917.


Appeal from the District Court of Burleigh County, Honorable *W.
L. Nuessle,* Judge.

Judgment affirmed.

*George E. Wallace* and *Robert Dunn,* for appellant.

*Watson, Young, & Conmy,* for respondent.


BURR, District. Judge.   The plaintiff brought this action under the
statute to determine conflicting claims to real property.   The com-
plaint is in the usual statutory form, and requires the defendant to
set forth all of its adverse claims to the property described, so that the
validity thereof may be determined and that they be adjudged null and
void, etc.   The answer admits all of the allegations of the complaint,
and, as affirmative relief, alleges "that during the year 1912 the defend-
ant, by its proper officials, listed for taxation the lignite coal and
minerals and the title to coal and minerals underlying the lands
described in plaintiff's complaint, the ownership of which has been
severed from the ownership of the overlying strata; and that theretofore
the plaintiff has owned said land and sold the same, reserving to itself
the ownership of the lignite coal and minerals underlying said land."
The answer further alleges that, after the listing of the said lands for
taxation, they were duly assessed for taxation purposes; that the same
were equalized in the manner prescribed by law and the taxes duly
levied; that said taxes were never paid and became delinquent March
1, 1913.   The answer then sets forth a description of the lands so
assessed, together with the taxes, penalty, and interest levied and
assessed against each tract and prays that the said taxes be declared to

be and remain a lien upon the land, etc.   The plaintiff's interest in the lands involved is set forth in paragraph 3 of the complaint, as follows:

That the plaintiff has an estate in, and interest in, the following described real property, situated in the above-named county and state, to wit:

Mineral Rights
Assessed in Oliver County, North Dakota.
1912.
Northwestern Improvement Company.

—following this with a columnized statement showing the description of the quarter, the section, township, and range in which the lands are situated and the number of acres in each parcel of land.

The facts in the case are stipulated by the parties, and from the stipulation we find: That all of the allegations in the complaint are true; that the title to the lands in question passed from the United States government to the Northern Pacific Railway Company; that the Northern Pacific Railway Company conveyed the land to the plaintiff; that the plaintiff conveyed said land to various owners, with the exception that in each instance of conveyance to said owners the plaintiff reserved all mineral rights, which reservations, contained in plaintiff's deeds, were in two forms, as follows:

Form 1.   "Reserving and excepting from said lands as are now known, or shall hereafter be ascertained, to contain coal or iron, and also the use of such surface ground as may be necessary for mining operations, and the right of access to such reserved and excepted coal and iron lands, for the purpose of exploring, developing and working the same; the use of such surface ground and the right of access herein reserved to be for the use and benefit of said party of the first part, its successors, and its assigns of the lands hereby excepted."

Form 2.   "Excepting and reserving unto the grantor, its successors and assigns, forever, all coal or iron upon or in said lands, together with the use of such of the surface as may be necessary for exploring for, and mining or otherwise extracting and carrying away the same.   But the grantor, its successors and assigns, shall pay to the grantee, or to his heirs or assigns, the market value at the time mining operations are

commenced, of such portion of the surface as may be used for such operations, including any improvements thereon; the grantee, his heirs, and assigns shall notwithstanding have at all times the right to mine and remove such reasonable quantity of coal as may be necessary for his own domestic use."

That Oliver county had no organized townships in 1912, but the assessment was made by county assessors; that the assessment was made between the 1st day of April, 1912, and the 20th day of June, 1912; that the assessors' books were turned in and filed with the county auditor on or before June 20, 1912, and that the assessment made by the assessors included all of the lands described in the complaint; that the records so turned in contained no assessment of mineral reservations, and were in the same form as assessments of land where there were no mineral reservations; that the county board of equalization met in July, 1912, and adjourned without making or attempting to make any assessment of mineral reservations; that during the months of August and September, 1912, and after the adjournment of the board of equalization, the county auditor entered a valuation upon the assessors' books of $50 for the mineral reservation of each quarter; that no record action was taken by the board of county commissioners, no notice of such assessment given to the plaintiff, and no hearing had upon the valuation; that the county auditor had informed the board of equalization of his intention to make the assessment, and conferred informally with them, thereafter, on the subject of valuation; that after the assessment the county auditor copied the same into the tax lists and extended the same at the rate and in the amounts set forth in the answer; that the first information the plaintiff had as to the amounts claimed was contained in a notice sent by the county treasurer in the latter part of January, 1913, and that no notice was given nor opportunity afforded to appear before any board on the matter of the assessment in question; that the assessment, as inserted in the assessors' books, by the county auditor, was extended on the tax list for 1912 and the county auditor caused the same to be advertised and the land sold for delinquent taxes in December, 1913, and were bid in by the county, with the usual certificates of sale issued; that in the assessors' books, under the heading of "Owner of Land," the auditor wrote: "Owner of minerals and coal," and wrote, as and for the owner, "N. W. Imp. Co.," and in describing

all and every of the subdivisions of land used letters and figures in the following form: "2–3–141–86 321 '100' "—the letters and figures being varied to describe each parcel as occasion required; that in all descriptions of the lands, in books and lists, notices and certificates, the same symbolic characters were used; that the board of equalization, in passing upon the assessments of these lands, valued and equalized them without regard to mineral reservations, and that the county assessors in assessing the land did not add to or subtract from the values of the lands, because of the division of title or severance of the mineral reservations; that the values as affixed by the county auditor in the months of August and September, 1912, were in addition to the values as returned by the assessors and as equalized by the county board, and constituted a valuation in addition to that imposed upon similar land where the mineral rights had not been severed; that the plaintiff has never made any examination of the lands in controversy for the purpose of determining whether or not there are minerals in or upon it, and have no knowledge as to whether there is any mineral of any kind upon any of said tracts; and that the Northern Pacific Railway Company has never made any such examination and has no knowledge of any mineral on said tracts. By the stipulation of the parties this action was tried in the county of Burleigh, before the Honorable W. L. Nuessle, judge of the district court of said county, and in said court decision was rendered in favor of plaintiff, and judgment entered holding all claim and interest on the part of the defendant herein to be null and void, and quieting title to the lands involved in the plaintiff as against all asserted claims of this defendant. From this judgment the defendant appealed, asking a trial *de novo*.

The first question to be determined is whether the complaint states a cause of action in favor of the plaintiff. This issue is not raised by the parties but by a member of this court, and is based upon the description of the title or interest in the real property claimed by the plaintiff and set forth in its complaint. Paragraph 3 of the complaint alleges: "That the plaintiff has an estate in and interest in the following described real property, situated in the above-named county and state, to wit: Mineral rights assessed in Oliver county, North Dakota," —following this, with a detailed description of the several parcels of land, aggregating in all over 26,000 acres. There was no motion to

make the description of the interest in the real property more specific, the description follows the form set forth in § 8147 of the Compiled Laws, and the term, "mineral rights assessed in Oliver county, North Dakota," while qualifying to a certain extent the allegation that the plaintiff has an estate in the real estate thereinafter described, is the description of the real estate claimed by the plaintiff. Mineral rights in land are analogous to mining rights, and mining rights are considered a particular estate in land. Smith v. Cooley, 65 Cal. 46, 2 Pac. 880. In this case cited the grantor had conveyed an interest expressly conditioned as "a mining right on the premises above" described, and this "mining right" is held to be an estate in real property. In the case at bar the estate in land is described as mineral rights in certain land, and the stipulation of facts, as well as the answer, admit that the plaintiff has an estate in lands described consisting of mineral rights in said land. The whole case is based upon the attempt of the county to assess these "mineral rights," as real estate held by the plaintiff, and if the "mineral rights" claimed were too vague a description of real estate or suggested a possibility of personal property, the question should have been raised upon motion or demurrer. The admitted facts show an express reservation of title to a portion of the real estate, to wit, the minerals in and upon the land, with right to such use of the surface as may be necessary to use for the purpose of exploration and mining. The fact that it is not certain whether there is any mineral in said land or in portions of said land does not render the reservation void. The plaintiff still has the right to go upon the land and use such portion thereof as may be necessary for exploration and mining. We think the complaint states a sufficient estate in real property to maintain a cause of action.

It is clear that the assessment as made by the county auditor is null and void. The description of the lands as set forth on the assessment roll is in the form which has been repeatedly declared by this court to be insufficient as a basis of taxation. In Power v. Larabee, 2 N. D. 141, 49 N. W. 724, this court said: "No valid assessment was made or could be made on such pretended description." This rule was followed in numerous cases since. It is not necessary to determine here whether such rule should be abandoned, for the attempted assessment made by the county auditor is void on other grounds. Under the pro-

visions of § 2216 the county auditor, "if he has reason to believe . . . that the assessor . . . has omitted . . . any property which is by law subject to taxation, shall proceed at any time before the final settlement with the county treasurer, to correct the return of the assessor, and to charge the owners of such property, on the tax lists, with the proper amount of taxes," but "the auditor in all such cases shall notify every such person before making the entry on the tax list that he may have an opportunity of showing that his statement on the return of the assessor is correct; and the county auditor shall, in all cases, file in his office a statement of the facts of evidence upon which he made such correction." The notice to "every such person" as required in this section is to the owner as well as to anyone "whom he may suppose to have knowledge of the articles or article of the property," and the stipulation of facts shows expressly that this was never done. No notice was ever given to the owners, and no statement of the facts filed in his office. It is clear, therefore that the assessment is void.

The appellant urges, however, that even though the act of the county auditor may not have been in compliance with the statute, yet, under the provisions of § 2201, the court has the power to reduce the amount of taxes, if the same are excessive, to give judgment accordingly, and to amend and correct all irregularities and defects in the form or manner of assessment. This section says: "In any action . . . for the . . . annulment of taxes levied . . . against any . . . property in this state and in any action or proceedings to determine adverse claims to real estate, no tax shall be set aside for any irregularity or defect in form or illegality in assessing, laying or levying such tax, if the . . . property upon which such tax is levied, assessed or laid is in fact liable to taxation, unless it be made to appear to the court that such irregularity resulted to the prejudice of the party objecting, . . . the court shall also have power to amend and correct all irregularities or defects in the form or manner of assessment." We hold that this section does not confer upon this court the power to make an assessment and levy taxes. The defects and irregularities in this case are not defects or irregularities in manner or form alone; they are jurisdictional in character. While we hold, as hereinafter stated, that said mineral rights are, in fact, liable to taxation, and while in such cases the statute says that a tax shall not be set aside for any illegality

in assessing or levying a tax in such cases; yet the illegality which may be corrected by the court is an illegality simply as to some portion of the proceedings only,—an illegality that does not destroy the attempted assessment *in toto,* but merely a part of the proceedings,—and, in any event, the action of the court in maintaining an assessment under the facts stipulated here would certainly result in prejudice to the plaintiff, unless the court would sit as an assessing and equalizing board. That this power and authority conferred upon the court by this section, in order to cure defects in assessment, does not apply to the case at bar. See State Finance Co. v. Bowdle, 16 N. D. 193, 112 N.W. 76. Neither is the plaintiff debarred from maintaining this action because no tender is made of any sum for taxes. There is no tax levied, and no offer need be made. There is ample remedy for the county so that the property will not escape taxation. Under the provisions of § 2217 of the Compiled Laws, it is the duty of the county auditor to keep a book in which he shall enter each year all real property which shall have been omitted in the assessment of any previous years, or the assessment of which has been set aside by the judgment of any court, in order that the said property will not escape taxation.

It is urged by respondent that no taxes should be levied upon this property, for the reason that all taxes have been paid by the surface owner. Counsel for respondent cites § 2076 in support of the contention that the mineral rights cannot be taxed separately from the land. This section states that "real property, for the purpose of taxation, includes the land itself—and all mines, minerals, quarries, in and under the same." The definition also includes "all rights and privileges" belonging to the land. The aim of this section is to include in real property everything which is connected therewith in its use and for which the ground itself is a constituent element. The statute undertakes to say what is defined as real estate, but it does not say in whose name the same shall be assessed. Here are parcels of land where the grantor reserved to himself certain specified interests. The interests conveyed by the grant and the interests reserved to the grantor are clearly ascertainable from the records. They are just as separate and distinct as if the grantor had conveyed an undivided one-half interest. The fact that the auditor was able, from the records alone, to ascertain the interests of the plaintiff herein, so as to place them

upon the assessment roll after the adjournment of the board of equalization, and that these reservations were of long-standing record, shows that they could have been placed upon the assessors' books before the delivery of the same to these officials. That such reservations as these should be assessed in the name of the plaintiff, if they have taxable value, is clear from the nature of the conveyance. Formerly all of the land—the surface and the mineral rights—was owned by the plaintiff. Plaintiff devested itself of the surface and the use of the land, but retained an interest therein for itself. This interest retained must necessarily detract from the value of the land to the grantee. If plaintiff's theory is correct the grantee would be compelled to pay all of the taxes, and then adjust with the plaintiff the proportion plaintiff should pay. The law does not contemplate putting this burden upon the grantee. To the extent to which it detracts from the value of the land it is an interest in the land belonging to the plaintiff. A decision of the supreme court of Montana delivered in July of this year—Northern P. R. Co. v. Musselshell County, — Mont. —, 169 Pac. 53, sustains this view. While it is true the presumption is that the public officers do their duty and that the assessors, in valuing these parcels of land, assessed them at their proper value, yet it is just as reasonable to presume that the assessors, in valuing the land, valued simply the interest of the owner named in the assessors' records. If that owner paid a larger tax than he should have paid, that is a matter of adjustment between him and the county. The records of the register of deeds show the reservations in favor of the plaintiff, and we have as much right to assume that the assessors, in valuing this land, were guided by their knowledge of these reservations and, therefore, assessed to the owner named simply his interest in the land, as that said assessors included in the interest of the owner named the value of these minerals and thus compelled the owner—the grantee—to pay the share of taxes that plaintiff should have paid. The value of these mineral rights can be ascertained. In the stipulation of facts it stated that certain persons, if sworn as witnesses, would testify that intending purchasers of these tracts, where the reservations had been made by the grantor, refused to carry out their contracts unless a reduction in the price of the land was made, the reduction running all the way from $1.50 an acre to $500 on a quarter. Where no mines have been opened, and where no deposits

of coal have been ascertained so as to be able to estimate the amount of mineral present in the land, the difference of the value of the land as sold with and without this reservation of title in the grantor would measure the value of plaintiff's interest in the land. Where the amount of mineral in the land has been ascertained, then the value of that mineral, together with the value of the rights to go upon the lands, would be a fair measure of the plaintiff's interest.

The judgment of the lower court is affirmed.

BIRDZELL, J., being disqualified, did not participate, the Honorable A. G. BURR, Judge of the Ninth Judicial District, sat in his place.

CHRISTIANSON, J. (concurring specially). I concur in the propositions announced in paragraphs 1, 2, and 3 of the syllabus, and this will result in an affirmance of the judgment. In this connection, however, I desire to say that I concur in the proposition announced in paragraph 3 of the syllabus, solely on account of the construction placed upon § 2201, Compiled Laws 1913, by this court in State Finance Co. v. Bowdle, 16 N. D. 193, 198, 112 N. W. 76, and Grand Forks County v. Frederick, 16 N. D. 118, 124, 125 Am. St. Rep. 621, 112 N. W. 839. If this was a case of original impression, I should unhesitatingly hold to the contrary.

My ideas with respect to curative statutes in tax proceedings were well expressed by the supreme court of New Jersey in Elizabeth v. State, 45 N. J. L. 157, 159. The court said: "It [the purpose of the legislature] was to assign to the court the province of seeing that its suitors who were liable, or whose property was subject to these assessments for public improvements and who were seeking to vacate any of such assessments, should in every event be made to bear their fair and legal share of the burden. This provision was well timed and most salutary; for while it preserves to the owner of the property the ability to relieve himself from so much of his tax as is unjust, it at the same time, and by a summary procedure, compels him to do justice to the public by paying such part of his assessment as is justly due. This law is, in the highest sense, remedial, and should be construed with liberality, so as to abate the mischief of taxpayers avoiding, by litigation, their honest dues to the government."

I also agree that a reservation of mineral right is an interest in real property, assessable against the grantor making the reservation, but express no opinion upon the other matters covered by paragraph 4 of the syllabus.

Robinson, J. (specially concurring). The plaintiff brings this action in the form of a suit to quiet title to land. It avers that it has some title or interest in some 120 tracts of land in Oliver county, to wit, "Mineral Rights" and that defendant claims certain liens adverse to the plaintiff. Defendant county by answer sets up a claim of lien, and it was duly adjudged that the claim of the county is void, and defendant appeals to this court.

The claim is based on certain tax proceedings for the year 1912, which are manifestly void, for the reason that in 1912 there was no assessment for taxation of the mineral rights described in the pleadings.

The only question is, Can the plaintiff maintain this action? It is not an action in equity, because the complaint makes no appeal to equity. It is based on the statute, which provides: "An action may be maintained by any person having an estate or interest in real property against another who claims an estate or interest therein adverse to him for the purpose of determining such adverse claim." Rev. Codes 1899, § 5904. The plaintiff does not come within the statute. Neither the complaint nor the evidence shows that the plaintiff has any title or interest in the lands. The complaint avers merely that the plaintiff has an estate and interest in certain described lands, to wit, "Mineral Rights." It contains not a word to show that there is any mineral on either or any of the tracts of land. In the brief of the respondent it is said no examination of these lands has been made, and it is not known whether they contain mineral of any kind or not; and that is strictly in accord with the stipulation, § 19. Now as the pleadings and the evidence fail to show that the plaintiff has any title or interest in the lands, the case presents merely a moot question, and not any right to real property. Hence, the action should be dismissed. This court will not waste its time in considering and deciding cases about nothing.