GAMBLE-ROBINSON FRUIT COMPANY, a Corporation, Respondent, v. T. H. H. THORESEN, as Tax Commissioner of the State of North Dakota, Appellant.

(42 A.L.R. 1039, 204 N. W. 861.)

**Taxation — personal property listed for taxation must be subtracted from value of shares of stock in taxing corporate excess; moneys and credits cannot be subtracted from value of shares of corporate stock in taxing corporate excess.**

1. Paragraph 6 of § 1 of chapter 305 of the Session Laws of 1923, with reference to the taxation of corporate excess, is construed and held to require the subtraction from the market or actual value of the shares of stock of corporations, joint stock companies and associations of personal property which is listed for taxation and taxed at the rate of the general property tax; and as moneys and credits are expressly exempted from taxation and are not listed and taxed, they can not be subtracted from such value.

**Taxation — classification of property for taxation must have regard to differences and cannot be purely arbitrary; classification of property for taxation based wholly on ownership is arbitrary.**

2. Legislative classification of property for tax purposes must have regard to differences in character or use of the property, character of the business affected, or of governmental relationship and can not be purely arbitrary. A classification based wholly on grounds of ownership, that is, as to whether a given species of property be owned by a corporation, joint stock company or association, or owned by an individual, is arbitrary.

Note.—(2) Classification of property for taxation based on ownership, see 26 R. C. L. 242.

(4) Uniformity in franchise tax, see 26·R. C. L. 170.

(7) Constitutionality of taxing statute which refuses to corporation deduction of credits allowed individual taxpayer, see annotation in 42 A.L.R. 1049.

**Taxation — corporation franchise tax held tax on franchise as property and not an excess tax.**

3. Chapter 305 of the Session Laws of 1923 is construed in the light of prior legislation and of the provisions of the state Constitution and of article 29 of the Amendments thereto, and it is held that the tax upon the franchise of corporations therein provided for is a tax upon the franchise as property and not simply an excess tax.

**Taxation — corporate franchise is properly within constitutional requirement that taxes shall be uniform on same class of property.**

4. The franchise of a corporation is property within the provisions of article 29 of the amendments to the Constitution of North Dakota requiring that taxes shall be uniform upon the same class of property including franchises within the territorial limits of the authority levying the tax.

**Taxation — law providing for valuation of corporate franchise necessarily causing inequalities as between corporations is invalid.**

5. Where the legislature, in providing for the valuation of a franchise, directs the application of a formula containing elements having no bearing upon the determination of the question of the value, and where, by the application of such formula, inequalities necessarily result, as between corporations, join stock companies and associations enjoying like privileges, the law fails to secure the uniformity required by article 29 of the amendments to the state Constitution.

**Constitutional law — application of arbitrary standard to determine value of corporate franchise for taxation, depriving corporations of exemptions enjoyed by others, held to deny equal protection of laws.**

6. Where, as a result of the application of an arbitrary and artificial standard in determining the value of a franchise as property for taxation, a corporation, joint stock company or association is deprived of exemptions from taxation upon a class of property which is exempt in the hands of individuals, those discriminated against are denied the equal protection of the laws within the Fourteenth Amendment to the Constitution of the United States.

Opinion filed July 16, 1925.

Constitutional Law, 12 C. J. § 888 p. 1155 n. 56 New.   Taxation, 37 Cyc. p. 747 n. 78, 79; p. 748 n. 83, 83 New; p. 751 n. 1; p. 817 n. 61; p. 1026 n. 51 New.

Appeal from the District Court of Burleigh County, *Jansonius, J.* Affirmed.

*T. H. H. Thoresen,* for appellant.

While a tax assessed under Sec. 2110, Comp. Laws 1913, is in form

a property tax, it is intended to reach, among other things, the primary corporate franchise granted to it by the state, and as to that it is in substance or effect, to some degree at least, a tax upon the privilege of being a corporation. Grand Forks Co. v. Cream of Wheat Co. 41 N. D. 330.

The statute does not in terms impose a franchise tax as distinguished, or separated from a tax on personal property, but the Supreme Court of the state construes the tax upon this additional amount as a tax "in substance or effect, to some degree, at least, upon the privilege of being a corporation, or in other words, a tax upon corporate franchise granted it by the state.. Individuals are not required to include in their lists of taxable property any share or portion of capital stock or property of any corporation which such corporation is required to list. Comp. Laws 1913, §§ 2077, 2102, 2103, 2110; Grand Forks Co. v. Cream of Wheat Co. 253 U. S. 325.

Obviously a statute which is designated, primarily, or exclusively, to reach the entire corporate excess of a domestic corporation, without regard to where its business is transacted or capital employed, would be poorly adapted to reach only that portion of the corporate excess of a foreign corporation which may be attributable to the transaction of business within the state. Burleigh Co. v. Standard Oil Co. 201 N. W. 510.

*Newton, Dullam & Young,* for respondents.

It is presumed that different acts passed at the same session of the legislature are imbued by the same spirit and actuated by the same policy, and they should be construed each in the light of the other. Houston & T. R. Co. v. State, 95 Tex. 523, 62 S. W. 114.

BIRDZELL, J. This is an appeal from an order overruling a demurrer to the complaint. The complaint alleges that the plaintiff is a corporation organized and existing under the laws of the state; that, pursuant to the provisions of chapters 305 and 307 of the Session Laws of 1923, the defendant prepared a blank form designated "Corporate Excess Tax Return," which form contemplated that from the value of the corporate stock there should be deducted the aggregate value of the real property and the tangible personal property of the corporation listed for taxation, and, further, that there should be deducted the amount of moneys and credits owned by it; and that the balance re-

maining should be the amount taxable under chapter 305; that said blank was furnished to the plaintiff and return made thereon as of January 1, 1925 and that after deducting the value of the real and personal property listed for taxation from the actual value of the shares of stock, there remained a balance of $16,697.08; that the amount of moneys and credits owned by the plaintiff, as reported in said return, was $31,472.82; that after further deducting the amount of moneys and credits, there remained no balance to be certified to the county auditor as corporate excess taxable against the plaintiff for the year 1925; that notwithstanding the provisions of the acts of the legislature referred to, the requirements of the corporate excess tax return blank and the information furnished, the defendant notified the plaintiff to the effect that he was about to certify to the county auditor of Burleigh county the sum of $16,697.08 as the amount of corporate excess to be taxed against it at the rate of the general property tax in the city of Bismarck, the taxing district in which the plaintiff's business is located, on the basis of 75 per cent of the value so certified; that the defendant refused to deduct from such sum the amount of moneys and credits owned by the plaintiff as shown in its return; that the plaintiff's capital is invested in moneys and credits reported by it and that the value thereof is reflected in the value of its shares of stock, and that if the defendant certifies the amount of the corporate excess mentioned in the notice the moneys and credits owned by the plaintiff will in fact be taxed, whereas, under chapter 307 of the Session Laws of 1923, moneys and credits are expressly exempted from taxation; that unless the defendant is restrained and enjoined he will certify the sum of $16,697.08 for taxation as the amount of the taxable corporate excess of the plaintiff for the year 1925; that such threatened action is unwarranted, is contrary to and in violation of the statutes of the state; that it will impose undue and unjust burdens on the plaintiff, will subject it to taxes on property specifically exempted, will take its property without due process of law and will deny to it the equal protection of the laws, contrary to the provisions of the Constitution of North Dakota and to § 1 of the Fourteenth Amendment to the Constitution of the United States; and that such threatened certification will cause the plaintiff to suffer irreparable injury. The plaintiff prays judgment that defendant be required to deduct the moneys and credits owned by the plaintiff and

that the defendant be restrained and enjoined from certifying for taxation the sum of $16,697.08, or any other sum, as the amount of the corporate excess taxable against it.

The decision of this case turns upon the construction and effect of chapters 305 and 307 of the Session Laws of 1923. These acts are as follows:

"Chapter 305. Sec. 1. Amendment Section 2110 of the Compiled Laws of 1913 as amended by chapter 221 of the Session Laws of 1919 and chapter 119 of the Session Laws of 1921 is hereby amended and re-enacted to read as follows:

The president, secretary, or other principal accounting officer of any domestic corporation, joint stock company or association whether incorporated or not, excepting bank and loan and trust companies, the taxation of which is provided for by other legislation, shall make out and mail to the tax commissioner, upon blanks furnished by the tax commissioner for such purpose which may be upon the same blank upon which the income tax return is made out, a sworn statement setting forth the following information concerning said corporation.

1. The name and location of the corporation, joint stock company or association.

2. The amount of capital stock authorized and the number of shares into which said stock is divided.

3. The amount of capital stock paid up.

4. The market value, or if it has no market value then the actual value of the shares of stock, and in estimating the actual value of the capital stock, the surplus and undivided profits shall be included.

5. The value of all its real estate.

6. The value of its personal property which is listed for taxation and taxed at the rate of the general property tax.

7. The aggregate amount of the 5th and 6th items shall be deducted from the amount of the 4th item, and the remainder, if any, shall be listed and taxed as corporate excess. The real and personal property, except money and credits, of each corporation, joint stock company, or association shall be listed and taxed the same as other real and personal property.

Sec. 2. The amount of corporate excess taxable against each corporation shall be assessed by the tax commissioner and shall be certified

by him to the county auditors of the several counties on or before July first of each year, and the county auditor shall enter such assessment upon the tax list of the taxing district where its principal office or place of business is located, and extend taxes upon the same at the rate of the general property tax. The basis of assessment of corporate excess shall be such percentage of the total value thereof as is now or may hereafter be provided by statutes specifying the classification of property for purposes of taxation.

Sec. 3. In all cases of failure or refusal of any person, officer, corporation, joint stock company or association to make such statement, it shall be the duty of the commissioner to make such assessment from the best information he can obtain."

"Chapter 307. Sec. 1. Amendment. Section 1 of chapter 62 of the Laws of North Dakota enacted at the Special Session of 1919 is hereby amended and re-enacted to read as follows:

(1) Money and credits, as the same are defined in § 2074 of the Compiled Laws of North Dakota for the year 1913, are hereby exempted from taxation except moneyed capital of the citizens of the State of North Dakota which is so invested or used as to come into competition with money invested in bank stock of banks doing business in this state. This act shall not be construed so as to exempt the income from any class of money or credits from the operation of the existing or any future income tax law, nor to exempt any class of money or credits from the existing or any future law imposing a tax upon transfers of property, by will, gift or intestate law.

Sec. 2. Emergency. Whereas an emergency exists in that bank stock was inadvertently exempted from taxation by the section above amended and there is now no adequate method provided by law for the taxation of bank stock, therefore, this act is hereby declared to be an emergency measure and shall take effect and be in force from and after its passage and approval."

The principal contentions center about ¶ 6, § 1 of chapter 305 in light of chapter 307 which specifically declares that moneys and credits are exempted from taxation. It will readily be seen that § 1, chapter 305 provides for a return which shall show, among other things, the value of the shares of stock of the corporation and that from that value it is required that there shall be deducted the value of its real estate

and the value of its personal property *"which is listed for taxation and taxed at the rate of the general property tax."* The balance is required to be listed and taxed as "corporate excess." It is conceded that any moneys and credits owned by the corporation are not taxable by virtue of chapter 307, and ¶ 7 of chapter 305 recognizes this in the statement that "the real and personal property, *except moneys and credits,* of each corporation . . . shall be listed and taxed the same as other real and personal property." It is further conceded by the defendant—in fact it is admitted by the demurrer—that if the amount of moneys and credits owned by the plaintiff corporation be deducted from the aggregate value of the shares of stock, after subtracting the value of the corporate real and personal property listed for taxation, there is in fact no "excess" for taxation.

The plaintiff and respondent contends that chapter 305 operates necessarily to impose a property tax upon the corporation and that, notwithstanding the language of ¶ 6 of § 1, the moneys and credits of the corporation must be subtracted from the so-called excess; otherwise the effect of the chapter will be to tax the moneys and credits of domestic corporations, joint stock companies or associations, while leaving untaxed the moneys and credits of individuals; and that unless moneys and credits of domestic corporations, joint stock companies and associations are deducted from the excess, chapter 307 (which specifically exempts these items) is not given effect. On the other hand, it is argued by the defendant and appellant that, in making deductions to arrive at the corporate excess for taxation under chapter 305, he is legally bound by the express language of ¶ 6 of § 1, and that, consequently, he can deduct no personal property which is not listed for taxation and taxed at the rate of the general property tax—with the result that as to domestic corporations, joint stock companies and associations the corporate excess must be arrived at without deducting any moneys and credits. If it should happen, then, in particular cases, that the effect would be to tax as corporate excess a value attaching to the aggregate shares of stock of the corporation, which value would be reflected by its ownership of moneys and credits otherwise exempted from taxation, it is nevertheless taxable upon such value. It is said that the legislature has specifically denominated the tax a corporate excess tax; that it has prescribed a definite formula for arriving at the

Amount; that in so doing it has ignored the elements entering into such excess and that the defendant must likewise ignore the elements comprising such value.

The language of ¶ 6 of chapter 305 is clear and unmistakable and it was used in light of the fact that moneys and credits were not to be listed and taxed. This appears both from ¶ 7, § 1, of chapter 305 and from chapter 307 introduced by the same legislator and which must have been under consideration at the same time. Hence, it is clear that the tax commissioner is not authorized to deduct from the value of the shares of stock any personal property which is not listed for taxation and taxed at the rate of the general property tax. There can be no escape from the proposition that moneys and credits are personal property. Hence, the tax commissioner is not authorized to deduct moneys and credits. We believe that no other construction of this section is reasonably possible. It is about as plain in the respects indicated as the English language can make it.

So construed, the respondent contends that chapter 305 is necessarily unconstitutional in that it denies to the plaintiff the equal protection of the laws. As previously stated, it is conceded by the defendant that were it not for the fact that the corporation in question owns moneys and credits to the extent of $31,472.82, there would be no so-called corporate excess for taxation, following the formula prescribed. It was further frankly stated by the defendant on argument in this court that, if the item of moneys and credits is not permitted to remain as a part of the value of the corporate stock, there would be few, if any, corporations subject to any corporate excess tax. So, it is wholly on account of its ownership of the species of exempt property that the plaintiff is rendered liable to the taxation in question. Can this species of taxation, though denominated taxation of the corporate excess, be consistent with the constitutional mandate of equal protection? Or, to be more specific, is it competent for the legislature to provide for exempting moneys and credits generally from taxation and at the same time to provide that corporations owning moneys and credits which are likewise exempted as moneys and credits shall be taxable nevertheless on account thereof under a tax termed a corporate excess tax?

At the outset it may be well to note the difference between the statute in question and the statute before this court in the case of Grand Forks

County v. Cream of Wheat Co. 41 N. D. 330, 170 N. W. 863, 253 U. S. 325, 64 L. ed. 931, 40 Sup. Ct. Rep. 558.. The contention is made here that the statutes are substantially the same, and it is said that its constitutionality having been determined by the Supreme Court of the United States, the same questions should not be open to serious controversy here. This would, of course, be true if the acts were essentially the same. The act under which the tax against the Cream of Wheat Company was assessed, § 2110 of the Compiled Laws of 1913, provided expressly for the subtraction of the value of all the real property and all the personal property owned by the corporation from the market or actual value of the shares of stock, and the taxes in question in that case were levied at a time when all property was required to be taxed according to its true value. Section 176 of the Constitution of North Dakota. Hence, it is obvious that a tax assessed against a corporation on account of the value attaching to its stock over and above the value of its real and personal property, while the stock is exempt from taxation in the hands of the stockholder, would but reach, through the corporation, a property right enjoyed by the stockholder estimated at its true value and safeguarded against double taxation through the device of subtracting the real and personal property. Ordinarily, the property subtracted under this plan of taxation would be that for which the corporation was taxed. In short, the original statute was evidently a devise for reaching the value attaching to corporate stock over and above the value of the property owned, which, presumptively, would be otherwise taxed to it the same as similar property owned by an individual. See Wyandotte County Gas Co. v. Spaeth, 83 Kan. 191, 109 Pac. 785; Harvester Bldg. Co. v. Hartley, 99 Kan. 73, 160 Pac. 973; Durham County v. Blackwell-Durham Tobacco Co. 116 N. C. 441, 21 S. E. 423; State v. Duluth Gas & Water Co. 76 Minn. 103, 57 L.R.A. 63, 78 N. W. 1033.

The amended act under which the tax in question is proposed to be assessed must be considered in the light of the constitutional amendment (article 29 of the Amendments, chapter 90, Session Laws of North Dakota for 1919), which authorizes exemption of property from taxation, and of the statute which actually exempts moneys and credits. Sess. Laws 1923, chap. 307. It is not contended, and doubtless would not be argued, that the legislature could constitutionally provide for the

exemption of moneys and credits owned by individuals while taxing moneys and credits owned by domestic corporations, joint stock companies and associations; nor, conversely, that corporations, joint stock companies and associations could be exempted as to their moneys and credits while individuals are taxed. It is one thing to sustain a corporate excess tax law as a part of a uniform ad valorem assessment system and quite a different proposition to consider a corporate excess tax law in a system permitting classification and exemption of property for tax purposes in which the benefit of exemptions expressly provided are not extended to domestic corporations, joint stock companies or associations. It is a settled rule of law, as applicable to tax matters as to other concerns of government, that legislative classification, to be legitimate must have regard to differences in character or use of property, character of the business affected or of governmental relationship, and can not be purely arbitrary. See Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 33 L. ed. 892, 10 Sup. Ct. Rep. 533; Santa Clara County v. Southern P. R. Co. 9 Sawy. 165, 18 Fed. 385; American Sugar Ref. Co. v. Louisiana, 179 U. S. 89, 45 L. ed. 102, 21 Sup. Ct. Rep. 43; Kidd v. Alabama, 188 U. S. 730, 47 L. ed. 669, 23 Sup. Ct. Rep. 401; Cook v. Marshall County, 196 U. S. 261, 49 L. ed. 471, 25 Sup. Ct. Rep. 233; Citizens' Teleph. Co. v. Fuller, 229 U. S. 322, 57 L. ed. 1206, 33 Sup. Ct. Rep. 833; State ex rel. St. Paul City R. Co. v. Minnesota Tax. Commission, 128 Minn. 384, 150 N. W. 1087. Or, to use the language of Justice Brewer, in the case of Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 150, 41 L. ed. 666, 17 Sup. Ct. Rep. 255, the classification must be "one based on some reasonable grounds,— some difference which bears a just and proper relation to the attempted classification,—and is not a mere arbitrary selection." It requires no argument to prove that the character of the ownership—that is, as to whether a given species of property is owned by a corporation, joint stock company, or association, or owned by an individual—affords no reasonable basis for classification. If so, it could as well be provided that corporations, joint stock companies and associations should pay at a certain rate of valuation upon their real property, while individuals should pay according to a different rate. So, manifestly, considering the act in question as one imposing a tax upon the property or stock of the corporation, it necessarily has the effect of depriving it of the ben-

efit of the exemption upon moneys and credits, either wholly or partially. If, therefore, the legislation is subject to the constitutional limitation of equal protection, it can not be sustained.

But it is urged, in substance, by the appellant that the tax provided for is a corporate excess tax and that it must be considered as being merely what the legislature has designated it. It is contended that the corporate excess is not to be segregated into its component parts to determine whether or not it may represent a value attributable to the ownership of exempt property. These contentions depend for their validity upon the character of the tax involved; that is, as to whether it be a tax upon the property of the corporation or upon its franchise. The mere denomination of the tax as a corporate excess tax does not classify it from a legal standpoint with any degree of finality. There may be a tax upon the corporate franchise rated according to the corporate excess, or there may be a tax upon the property of the corporation (principally intangible) which is measured by the same standard. Whether the tax be of one kind or of the other, that is, a franchise tax in the nature of an excise or a property tax, is often difficult to determine, and this difficulty has given rise to great contrariety of views in the decided cases. See 26 R. C. L. 171 and the exhaustive collection of cases in the following L.R.A. notes: 57 L.R.A. 33 (see, particularly, pages 48 et seq.); 58 L.R.A. 513; 60 L.R.A. 321; and L.R.A.1915C, 386.

It will serve no useful purpose to review the conflicting views which may be found expressed in the many cases in which the character of a tax similar to that involved here has been under consideration. It is sufficient, for the purpose of this opinion, to note the manner in which it has been regarded heretofore in our legislation and in the Constitution. However, it should first be observed that, generally speaking, if the tax is one computed upon the valuation of property, and assessed where the property is situated or at the owner's domicile, there is a tendency to regard it as a property tax rather than as a mere franchise or excise tax. Gray on Limitations of Taxing Power, § 61 says:

"Where taxes are laid upon corporations by reference to the amount or value of their capital stock, the taxes are quite often regarded as being upon property. Such taxes usually provide for the deduction of the value of the realty from the total valuation, and the assessment of

the remainder as personalty, or for a deduction of the total value of the real and personal tangible property and the valuation of the remainder. The franchises taxed in such a case are taxed as a part of the 'unit-profit-producing plant,' to use a phrase recently come into vogue, and are regarded as a part of the property which goes to make up the value represented by the capital stock."

In 1 Cooley on Taxn. 3d ed. page 686, it is said:

"In same states all taxation as far as possible is brought to an ad valorem standard. Franchises are property and in such states may be taxed by a valuation, being estimated for the purpose either separately or as a part of the aggregate corporate property."

In fact, this principle and distinction was early recognized in the case of Society for Savings v. Coite, 6 Wall. 594, 18 L. ed. 897, a case relied upon by the appellant.

In this state, prior to the amendment to § 176 of the Constitution, it had long been the declared constitutional and legislative policy to tax all property according to its value in money. The system in vogue was known as the uniform ad valorem or general property tax system and the history of our state revenue legislation will disclose but few efforts in the direction of excise or franchise taxation. Hence, it would seem that the reasonable construction of § 2110 of the Compiled Laws of 1913 is that it provided for a property tax to be levied upon the intangible value attaching to the corporation, joint stock company or association by reason of the facilities due to its organization, and the privileges enjoyed by its stockholders or members. But, however this may be, it would seem to be entirely clear that under this section of the Constitution, as now amended by article 29 of the Amendments, chapter 87 of the Session Laws of 1919, the tax is a tax upon the franchise of the corporation to be assessed according to its value; for the requirement of that amendment is "taxes shall be uniform upon the same class of property, *including franchises* within the territorial limits of the authority levying the tax." Hence, franchises are declared by the Constitution to be a species of property, and it is required that taxes levied upon them shall be uniform within the territorial limits of authorities levying them. In the case of Bank of California v. San Francisco, 142 Cal. 276, 64 L.R.A. 918, 100 Am. St. Rep. 130, 75 Pac. 832, the Supreme Court of California had occasion to consider a

constitutional provision requiring the taxation of all non-exempt property and defining property as including franchises. In the opinion of the court it was said (page 282) "It is not claimed that a corporate franchise may not be taxed by a state, but it is urged that such tax has always been an excise tax, and not a tax on property," and, after discussing authorities, the following conclusion was reached: "Under the authorities, there can be no question that a state may provide for the taxation of a corporate franchise as property of the corporation." Then, with specific reference to the constitutional provision, including franchise within the definition of property, it was said that the question could hardly be said to be debatable. We are clearly of the opinion that, in view of the history of chapter 305 of the Session Laws of 1923, it being an amendment of § 2110 of the Compiled Laws of 1913, which had always been a part of a uniform ad valorem system, and particularly in view of article 29 of the amendments to the Constitution, which expressly regards the corporate franchise as property, the tax in question must be regarded as a tax upon the property of the corporation. Insofar as it may be a tax upon the franchise, it is a tax upon it as property. But it is said that in the case of Grand Forks County v. Cream of Wheat Co. 41 N. D. 330, 170 N. W. 863, this court held the tax, under § 2110 of the Compiled Laws of 1913, to be a franchise tax in the nature of an excise and that it was so upheld by the Supreme Court of the United States. In that case it was said:

"While a tax assessed under § 2110, supra, is in form a property tax, it is intended to reach, among other things, the primary corporate franchise granted to it by the state, and as to that it is in substance or effect, to some degree at least, a tax upon the privilege of being a corporation. We do not, however, deem it necessary to enter into any discussion with regard to the name by which the tax is or ought to be designated. The question is one as to power of the legislature to provide for the imposition of the tax under the conditions prescribed, rather than the method selected."

This expression, we think, is rather an indication that the tax was regarded as a property tax and that in levying it the authorities were deemed to have reached the intangible valuation resulting from the facilities granted by the state. We regard the expression as being in entire harmony with the conclusion reached in the instant case. In

the decision of the same case by the United States Supreme Court, 253 U. S. 325, 64 L. ed. 931, 40 Sup. Ct. Rep. 558, it was specifically stated in the opinion (page 328): "The view which we take of the matter renders it unnecessary to consider the question of whether or not the law under discussion imposed a franchise tax or a property tax." Hence, we hold that the tax in question is a property tax levied upon the value of the corporate franchise, considered as property and as including every advantage accruing to the corporation by virtue of the facilities afforded by the state. It follows that the tax must conform to the constitutional requirement of uniformity and that those against whom it is assessed are entitled to the equal protection of the laws.

Can it be said that the tax is uniform when the assessment or non-assessment depends upon the circumstance as to whether or not the corporation, joint stock company or association has investments in moneys and credits? To test the matter, suppose corporation A, with a capital stock of $50,000.00, has as its sole property real estate of the value of $50,000.00. Its stock is worth $50,000.00. Its real estate will be assessed and it will be allowed to subtract the full value, leaving no corporate excess. Corporation B, shortly before the assessment period, was in exactly the same situation, but it sold its real estate, receiving half the purchase price in money and taking mortgages for the balance. At the assessment period the stock is worth, say, $50,000.00. It has non-taxable cash on hand of $25,000.00 and non-taxable mortgages of $25,000.00, none of which may be subtracted from the value of its capital stock. Hence it must pay taxes on $50,000.00 as corporate excess, while the real estate is taxed to its new owners. Corporation A has no excess and is not taxed. Individuals having moneys and credits are exempted thereon. There is no more "excess" in corporation B than in corporation A. Their comparative status in this respect was not changed by the sale of the real estate. We are clearly of the opinion that, under the constitutional requirement of uniformity in the taxation of franchises as property, it is not competent for the legislature to determine their value upon a consideration of the taxability or non-taxability of the property owned by the corporation, joint stock company or association. Taxability or non-taxability is not a criterion of value. Taxation is a burden to be borne as equally and uniformly as may be, while exemption is a privilege that

must rest upon some public policy, and its enjoyment, where broadly extended to a class of property, must not be arbitrarily denied. Where the element of taxability of assets is artificially made the determining factor in the assessment of a species of property that is equally valuable whether those assets are taxable or not taxable, uniformity of valuation is impossible. If the value of the franchise may be raised for taxation by withholding the deduction of moneys and credits owned, it would seem to be equally competent to provide that the same circumstance should determine the value of the corporate real estate for taxation. With this arbitrary element injected, the tax can not apply uniformly as between those enjoying similar privileges. We are further of the opinion that a tax so determined violates article 14 of the amendments to the Federal Constitution guaranteeing to all persons the equal protection of the laws, in that it denies to corporations, joint stock companies and associations, wholly or partially, the benefit of chapter 307 of the Session Laws of 1923 exempting moneys and credits from taxation. It follows that the order overruling the demurrer to the complaint must be affirmed.

CHRISTIANSON, Ch. J., and BURKE, NUESSLE, and JOHNSON, JJ., concur.