NORTHWESTERN IMPROVEMENT COMPANY, a Foreign Corporation, Appellant, v. STATE OF NORTH DAKOTA, C. A. Fisher, as Treasurer of the State of North Dakota, and John Steen, as Auditor of the State of North Dakota, Respondents.

(220 N. W. 436.)

Opinion filed July 2, 1928.

*Conmy, Young & Burnett,* for appellant.

*George F. Shafer,* Attorney General, *George I. Reimestad,* Assistant Attorney General, and *T. H. Thoresen,* Tax Commissioner, for respondents.

BURKE, J. This is an action to set aside certain tax liens claimed by the state on mineral reserves and to quiet title to such property in the plaintiff.

The complaint is in form an action to quiet title, but it also alleges that the law under which the tax lien is claimed is unconstitutional. The state alleges in its answer that it has a valid lien upon the mineral reserves of the plaintiff under chapter 319 of the Laws of 1923. The plaintiff filed a general demurrer to the answer, and from an order overruling the demurrer the plaintiff appeals.

In 1923 the legislature passed an act providing for a tax on mineral reserves. The material portion involved herein is as follows:

"An annual state tax of three cents on each acre is hereby levied upon all deposits of lignite coal and minerals and all titles to coal and mineral underlying any and all lands, the ownership of which coal and minerals has been severed from the ownership of the overlying strata and the surface of the land. . . . The revenue collected from such taxes shall be paid into the general fund of the state for the purpose of defraying the general expenses of the state government."

Section 5 provides:

"On December thirty-first of each year, the state treasurer shall return the tax list of mineral reserves of the previous year to the state auditor and the same shall thereafter remain in his custody and payments of delinquent taxes shall thereafter be made to the state auditor. The state treasurer in returning such list shall certify to the state auditor that all such taxes as have not been marked 'paid' on the tax list, have not been paid. If any such tax shall remain unpaid for the period of three years after the same becomes delinquent, the state auditor shall notify all persons who, according to said lists or the lists of subsequent years appear to be the owners of the reserves upon which the taxes are delinquent, to the effect that such taxes are unpaid, stating the amount thereof and that unless paid within thirty days from the date of such notice, proceedings will be taken to declare the title to said mineral reserve forfeited to the state. On July first of each year,

the state auditor shall prepare a second notice of the delinquency of such tax and of intention to declare the title thereto forfeited to the state which shall be in substantially the following form: . . . Such notice shall be mailed by the state auditor to the owner of such mineral reserve who appears to be the owner thereof according to the records contained in the tax list of said year and subsequent years in his office and in the office of the state treasurer. Such notice shall be sent by registered mail.

"Sec. 6. Any mineral reserve upon which the delinquent tax for the year specified in the auditor's notice prescribed by the preceding section, is not paid before the following September first, shall become automatically forfeited to the state without further action on the part of any official, and shall become the absolute property in fee of the state of North Dakota, and the rights of the former owner thereof shall entirely cease and terminate. The auditor shall thereupon refrain from entering such mineral reserves as have been forfeited upon the tax lists of subsequent years.

"Sec. 7. The tax provided by this act shall be in lieu of all other direct property taxes upon mineral reserves.

"Sec. 8. Coal, lignite coal, oil and all other minerals and metals shall be included within the meaning of the terms 'mineral' or 'minerals' as used in this act. A severance of the minerals from the overlying strata and the surface of the land shall be deemed to have occurred when they are owned by different parties or when a conveyance is made of the surface which reserves in the grantor rights to any minerals or when a conveyance is made of minerals which reserves to the grantor the surface of the land."

It is the contention of the plaintiff that chapter 319 of the Session Laws of 1923 violates § 179 of the Constitution in this, viz.: it does not provide for the assessment of the mineral reserves in the county, city, township, village or district in which it is situated in a manner provided for the assessment of the other real property; that it violates § 176 in that it is not a uniform tax, that some of the mineral reserves are of great value, others of little or no value, and a flat tax per acre of the same amount on each tract regardless of the value and without classification violates the constitutional provision requiring uniformity and equality; that there is no uniform assessment of value and, there-

fore, no valid assessment upon a uniform rule or an ad valorem tax; that it violates § 174 of the Constitution limiting revenue to defray the expenses of the state not to exceed in one year four mills on the dollar of the assessed valuation of all taxable property in the state ascertained by the last assessment for state and county, and sufficient sum to pay the interest on the state debt; that it violates the 14th Amendment to the Constitution of the United States and § 13 of the Constitution of North Dakota in taking property without due process of law.

The first question in the case is raised by the contention of the defendant that the plaintiff has an adequate remedy at law and that he cannot maintain this action to quiet title to the lands in controversy, relying on the case of Bismarck Water Supply Co. v. Barnes, 30 N. D. 555, L.R.A.1916A, 965, 153 N. W. 454. In that case it was conceded that the property was not over valued but that the same was assessed and equalized at approximately the same proportionate rate as the property of the other tax payers. The ground upon which the plaintiff asked for equitable relief was based upon excessive levies. It was conceded that the taxes for county, city and school purposes were regular and valid. The court quotes with approval the following language:

"The cases in which courts of equity have exercised jurisdiction in matters of this character will be found to be confined almost exclusively to those wherein the tax itself is illegal or unauthorized,—not a legal tax assessed in an irregular manner."

That is the distinction between the case relied on and the case at bar. The Bismarck Water Supply Co. v. Barnes, supra, was a case where a legal tax had been irregularly levied, but it is the claim of the plaintiff in the case at bar that the law under which the state acted is unconstitutional and void, and therefore is not only irregular but wholly void.

The plaintiff clearly has the right to maintain its action under § 2194, Comp. Laws 1913, which reads as follows:

"Any person having or claiming title to or lien or incumbrance upon any land, whether in his possession or the possession of another, or vacant or unoccupied, may commence and maintain an action, either in law or in equity, at any time before or after the issuing of a tax certificate, and within three years after the execution and delivery of

a deed, or in case of deeds heretofore issued, then within three years after the taking effect of this section, against any party, person, county, state or corporation claiming any title to or interest in such lands or lien upon the same adversely to him by or through such tax sale, tax certificate or tax deed heretofore or hereafter made, to test the validity of the tax sale, tax certificate or tax deed, or to quiet the title to said lands as against such claims of such adverse claimant, or to remove the cloud from the title arising from such tax sale, tax certificate or tax deed, and if no action is commenced within the time aforesaid such tax deed shall vest in the grantee a fee simple title to the lands and premises described in such deed, free from all liens and incumbrances made or accrued at or prior to the date of the execution and delivery of such deed, except taxes, and such grantee may at any time thereafter maintain an action against any and all parties for the possession of such premises, and the rights of action herein given shall be governed by the same rules of procedure as rights of action given by § 8044; (should be § 8144 relating to adverse claims) provided, that nothing in this section shall be construed to prevent any person holding a tax deed from beginning an action against parties claiming title to or lien upon such premises at any time after the execution of the deed, to obtain possession of such premises, or to quiet the title to such lands as against such adverse claimants."

The state has complied with the law in every respect beginning with the year 1923. The notice of intention to forfeit plaintiff's title as provided by § 5 of the act was served upon the plaintiff and the state claims a valid lien against such mineral reserves. Under section 6 if the tax is not paid by the first of September following the notice to forfeit, the property becomes the absolute property in fee of the state. There was no sale, certificate of sale, or deed, but the procedure has the same effect; that is, it takes property forfeited to the state by the nonpayment of a tax. If the law is constitutional the property now belongs to the state. If the law is unconstitutional, it belongs to the plaintiff and it may maintain this action under § 2194, Comp. Laws 1913, to quiet title to said property.

There are a great many thousand acres of land affected by this action. It is a matter of common knowledge that in the sale of large tracts of land donated to the Northern Pacific Railway Company, the mineral

was reserved. The only classification for the taxes on these mineral reserves provided in chapter 319, Session Laws of 1923, is one of ownership; that is, such mineral reserves are subject to the tax of three cents per acre when the ownership of the minerals has been severed from the ownership of the overlying strata and the surface of the land, and there is included in the term "mineral" or "minerals," as used in the act, coal, lignite coal, oil, and all other minerals and metals. A severance of the minerals from the overlying strata and the surface of the land shall be deemed to have occurred when they are owned by different parties or when a conveyance is made of the surface which reserves in the grantor rights to any minerals or when a conveyance is made of minerals which reserves to the grantor the surface of the land. In other words, when the owner of the land conveys the land to another reserving in such grantor such mineral, or where the mineral is conveyed reserving the title to the surface in the grantor, the mineral is subject to the tax. In the case of Northwestern Improv. Co. v. Oliver County, 38 N. D. 57, 164 N. W. 315, this court held:

"Where a grantor conveys land, reserving to itself the 'mineral rights,' such reservation is an interest in the land properly assessable against the grantor."

The property is taxable and should be taxed, but the tax must be legal.

The state relies upon the case of State ex rel. Fargo v. Wetz, 40 N. D. 299, 5 A.L.R. 731, 168 N. W. 835. We are of the opinion, however, that this case is not in point for the reason that the statute there involved provides a reasonable classification. It provides a minimum tax upon automobiles of not less than $6, and for automobiles having a higher rate than 20-horse power an additional fee of fifty cents for each additional horse power. In the case at bar there is no classification of the property unless it be a classification of ownership. Each tract sold, upon which the mineral rights are reserved, is taxed the same as every other tract regardless of the value or kind or amount of mineral, or whether there is any mineral at all. Mineral reserves of gold, if any, or oil would pay three cents an acre the same as mineral reserves of lignite coal or mineral of even less value or of no value. The owner of very valuable mineral reserves could organize a corporation and sell either the surface or the minerals to the corporation, and

in such case the tax would be three cents an acre on the mineral which might be worth millions.

In the case of State ex rel. Fargo v. Wetz, supra, the court said:

"A foremost authority on the subject of taxation in the American states condemns the general property tax and says 'The standard of ability has been shifted from property to product; the test now is not the extent, but the productivity, of wealth. . . .' "

Continuing the court further said:

"As an aid in determining the meaning of the amended § 179 (of the Constitution), it should be borne in mind that § 202 of the Constitution requires the separate submission of amendments so that they may be separately voted upon, and that chapter 103 of the Session Laws of 1913, which amends both §§ 176 and 179, was adopted as one amendment. We should assume, therefore, that it was desired to effect but one basic change in the Constitution, and that whatever alterations in other sections were deemed essential to make that change effective were made for that purpose only. The basic change sought is doubtless found in § 176, wherein the rule of general uniformity is changed to that of a permissive classification accompanied by a requirement of territorial uniformity. The change made in § 179 by removing the direction to apportion the assessed valuation of the utilities to the local units but brings it into harmony with § 176. Where a single purpose seems to be dominant in an amendment, we should be reluctant to give to other sections a construction that would tend to defeat it; particularly where the section which is not wholly consistent in its language was but a little more than an appendage to that which was most radically changed. . . . Had it been desired to limit the power of the legislature to prescribe property taxes in such a way as to permit no other kind of tax except one levied upon an ad valorem basis, it would seem that such a limitation would have been expressed in § 176. In the absence of such a provision, it cannot be held that the legislature is precluded from laying a property tax upon any basis that will exact contributions according to an equitable standard and one which is free from the vice of arbitrary classification. Under the law in question, the amount of the fee or tax is dependent upon the horse power of the motor, which is determined according to a rating established by the National Association of Licensed Automobile Manufacturers."

This case simply holds that the legislature is not precluded from laying a property tax free from the vice of arbitrary classification; that the classification by horse power was free from such vice and that it does not offend against territorial uniformity as required by § 176 of the Constitution. We quote from the case of Gamble-Robinson Fruit Co. v. Thoresen, 53 N. D. 28, 42 A.L.R. 1039, 204 N. W. 861: "It is a well-settled rule of law, as applicable to tax matters as to other concerns of government, that legislative classification, to be legitimate, must have regard to differences in character or use of property, character of the business affected or of governmental relationship, and cannot be purely arbitrary. See Bell's Gap R. Co. v. Pennsylvania, 134 U. S. 232, 33 L. ed. 892, 10 Sup. Ct. Rep. 533; Santa Clara County v. Southern P. R. Co. 9 Sawy. 165, 18 Fed. 385; American Sugar Ref. Co. v. Louisiana, 179 U. S. 89, 45 L. ed. 102, 21 Sup. Ct. Rep. 43; Kidd v. Alabama, 188 U. S. 730, 47 L. ed. 669, 23 Sup. Ct. Rep. 401; Cook v. Marshall County, 196 U. S. 261, 49 L. ed. 471, 25 Sup. Ct. Rep. 233; Citizens' Teleph. Co. v. Fuller, 229 U. S. 322, 57 L. ed. 1206, 33 Sup. Ct. Rep. 833; State ex rel. St. Paul City R. Co. v. Minnesota Tax Commission, 128 Minn. 384, 150 N. W. 1087. Or, to use the language of Justice Brewer, in the case of Gulf, C. & S. F. R. Co. v. Ellis, 165 U. S. 150, 41 L. ed. 666, 17 Sup. Ct. Rep. 255, the classification must be 'one based upon some reasonable ground— some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection.' "

It was further held in this case:

". . . that a classification based wholly on ground of ownership; that is, as to whether a given species of property is owned by a corporation, joint stock company, or association, or owned by an individual, is arbitrary. The classification must be one based upon some reasonable ground, some difference which bears a just and proper relation to the attempted classification and is not a mere arbitrary selection. It requires no argument to prove that the character of the ownership; that is, as to whether a given species of property is owned by a corporation; joint stock company, or association, or owned by an individual—affords no reasonable basis for classification.

It is just as unreasonable and arbitrary to provide a classification based upon the severance of ownership of the minerals from that of

the surface. It is true that all owners of minerals severed from the surface are in the same class, but that is not a classification of property but of persons. The tax is not upon the person but on the property, and it is the property that must be placed in reasonable classes for the purpose of taxation. To be uniform property taxes must be laid with regard to the value, or some other characteristic of the property which justifies a classification. The tax in question is not uniform upon the same class of property in the taxing territory as required by § 176 of the Constitution and is therefore void.

We are of the opinion that it also violates § 179 of the Constitution. As heretofore stated §§ 176 and 179 were submitted for amendment as article 20 in 1914, apparently, as this court said, in the case of State ex rel. Fargo v. Wetz, 40 N. D. 299, 5 A.L.R. 731, 168 N. W. 835, "for the purpose of harmonizing the two sections." In 1918, § 176 was again amended by providing that "the legislature may by law exempt any or all classes of personal property from taxation, and within the meaning of this section, fixtures, buildings and improvements of every character, whatsoever, upon land shall be deemed to be personal property. Except as restricted by this article the legislature may provide for raising revenue and fixing the situs of all property for the purpose of taxation."

It will be noted that no reference is made to § 179, and that in referring to the classes of personal property it states specifically that *within the meaning of this section* fixtures, buildings and improvements are deemed personal property, later it says, *as restricted by this article, not by this section, but by this article,* the legislature may provide for raising revenue and fixing the situs of all property for the purpose of taxation. Doubtless the phrase, "as restricted by this article," refers to article 20, which included §§ 176 and 179 as submitted and amended in 1914, Session Laws 1915, page 404. The only property affected by § 176 as amended in 1918, the situs of which may be fixed by the legislature is personal property. It does mention all property of the United States and of the state, county, and municipal corporation and property used exclusively for school, religious, cemetery, charitable or other public purposes, but it states specifically that all such property shall be exempt from taxation, therefore, the legislature cannot fix the situs of such property for taxation as it is not taxable.

The only other property mentioned is personal property over which the legislature is given absolute control, provided, it does not come within the class specified as exempt. The legislature may exempt it entirely from taxation, or it may tax any or all classes of personal property and fix the situs of all such property for the purpose of taxation. Section 176 does not refer to article 20 as submitted in 1914, amending §§ 179 and 176 in the one article, nor does it refer in any way to § 179 which reads as follows:

"All taxable property except as hereinafter in this section provided, shall be assessed in the county, city, township, village or district in which it is situated, in the manner prescribed by law. The property, including franchises of all railroads operated in this state, and all express companies, freight line companies, dining car companies, sleeping car companies, car equipment companies, or private car line companies, telegraph or telephone companies or corporations operating in this state and used directly or indirectly in the carrying of persons, property or messages, shall be assessed by the state board of equalization in a manner prescribed by such state board or commission as may be provided by law. But should any railroad allow any portion of its railway to be used for any purpose other than the operation of a railroad thereon, such portion of its railway, while so used shall be assessed in a manner provided for the assessment of other real property."

It is clear from this section that all taxable property must be assessed in the county, city, township, village or district in which it is situated, except, the property of all railroads, express companies, freight companies, dining car companies, sleeping car companies, car equipment company, or private line companies, telegraph or telephone companies, or corporations operating in this state and used directly or indirectly in the carrying of persons, property or messages, and when such property is used in the operation of such utilities, it is assessed by the state board of equalization, and when not used for such purpose it is assessed in the manner provided for the assessment of other real property in the county, city, township, village or district in which it is situated.

The mineral reserves involved in this action being real property, must under § 179 be assessed in the county, city, township, village or district in which they are situated.

The order overruling the demurrer is reversed and judgment ordered for the plaintiff.

Nuessle, Ch. J., and Birdzell, and Christianson, JJ., concur.

Burr, J. I concur without expressing any opinion as to the law stated in paragraph 3 of the syllabus.