KANSAS CITY v. WHIPPLE, *Appellant.*

### In Banc, December 23, 1896.

1. **Constitution**: POLL TAX FOR NOT VOTING: KANSAS CITY CHARTER. A city charter requiring the levy of a poll tax of $2.50 for sanitary purposes in years of a general election on every male resident of legal age but exempting persons voting at such election discriminates between subjects of legislation in the same class, and is therefore in violation of article 10, section 3 of the constitution, which provides that taxes "shall be uniform upon the same class of subjects within the territorial limit of the authority levying the tax."

2. ——: ——: ——. Such charter provision is also objectionable in that its purpose is to impose a penalty upon voters of Kansas City for not voting rather than to raise revenue to maintain a necessary function of the city government.

*Appeal from Jackson Circuit Court.*—HON. JAMES GIBSON, Judge.

REVERSED.

*A. M. Allen* and *J. W. S. Peters* for appellant.

(1) The section is unconstitutional because it is a tax which is not uniform in its operation over the same class of subjects. Constitution of Missouri, sec. 3, art. 10; Cooley on Taxation, p. 172; *Cody v. Spiegel*, 75 Mo. 145; *Haus v. Louisville*, 5 Dana, 28; *Pruitt v. Com'rs*, 94 N. C. 709; *Mayor v. Altrop*, 5 Cold. (Tenn.) 555; Cooley, Const. Lim., p. 607. (2) It is unconstitutional because it is an unwarrantable discrimination; it makes an arbitrary classification with respect to the subjects over which it operates, based upon no reason suggested by a difference in the situation or circumstances disclosing the necessity or propriety of any different legislation in respect to them;

it is a special law in its effect and operation. Const.
Mo., sec. 53, art. 4; Cooley, Const. Lim., p. 391; *State
ex rel. v. Tolle*, 71 Mo. 645; *State ex rel. v. Herrmann*,
75 Mo. 345; *State ex rel. v. County Court*, 89 Mo. 237;
*State v. Sheriff*, 48 Minn. 236; *Smith v. McDermott*,
93 Cal. 421; *Brooks v. Hyde*, 37 Cal. 366; *Utsey v.
Hyatt*, 30 S. C. 360; *State v. Board of License*, 48 N.
J. L. 438; *State v. Board of Education*, 55 Cal. 489;
*Desmond v. Dunn*, 55 Cal. 242. (3) The right to re-
frain from voting is a part of the right of suffrage, as
granted by the constitution. Sec. 9, art. 2, Const. Mo.;
Sec. 4, art. 8, Const. Mo. (4) It is unconstitutional
because it is in effect a regulation of the elective fran-
chise which is not uniform, nor reasonable, nor impar-
tial, and because it is a regulation not touching the
time, place or mode of exercising this franchise, but
affecting the franchise itself. Cooley, Const. Lim., p.
620; *Blair v. Ridgeley*, 41 Mo. 7; 1 Madison's Writ-
ings, 178; 3 Hist. of Republic (Alex. Hamilton), 24;
*Monroe v. Collins*, 17 Ohio St. 665; *Capen v. Foster*,
12 Pick. 485; *State v. Adams*, 2 Stewart, 239; *Page v.
Allen*, 58 Pa. St. 347; *Patterson v. Barlow*, 60 Pa.
St. 54; *Davis v. School District*, 44 N. H. 398;
*Rison v. Farr*, 24 Ark. 161; *Wisconsin v. Williams*,
5 Wis. 308; *Davies v. McKerby*, 5 Neo. 169; *McCaf-
ferty v. Guyer*, 59 Pa. 139; *Thomas v. Ewing*, 1 Brewst.
103. (5) Since the statute imposes a tax upon the
citizen, it should have no favors shown it and should
not be sustained upon any vague or doubtful inter-
pretation. Sutherland Stat. Const., secs. 362 and
365; Endlich, Int. Stat., sec. 352; *Dean v. Charlton*,
27 Wis. 522; *Powers v. Barney*, 5 Blatch, 202; *U. S.
v. Wigglesworth*, 2 Story, 359; *U. S. v. Watts*, 1 Bend.
580; *Railroad v. State*, 62 Miss. 105; *Mayor v. Hart-
ridge*, 8 Ga. 23; *Crosby v. Brown*, 60 Barb. 548; *Dean
v. Charlton*, 27 Wis. 522; *Shawnee Co. v. Carters*, 2

Kan. 115; *Bensley v. Water Co.*, 13 Cal. 306; *Sewall v. Jones*, 9 Pick. 412.    (6) It is a peculiar piece of legislation; peculiarities in legislation require critical investigation before approval.   *Page v. Allen*, 58 Pa. St. 353.    (7) It is an insult to the patriotism of every citizen of Kansas City; it is political levity.

*C. O. Tichenor* also for appellant.

*F. F. Rozzelle* for respondent.

(1)  The constitution was the only limitation upon the city in framing a charter for its government. *State ex rel. v. Field*, 99 Mo. 352.    (2) The law should not be declared unconstitutional unless it conflicts with some specific clause of the constitution.   *Co. Ct. v. Griswold*, 58 Mo. 175; *State, etc., v. Railway*, 48 Mo. 468; *Hamilton v. Co. Ct.*, 15 Mo. 3; *Kelley v. Meeks*, 87 Mo. 400.    (3) The charter provision is not in conflict with section 3, article 10 of the constitution.  *City v. Bowler*, 94 Mo. 630;  *Glasgow v. Rowse*, 43 Mo. 479; *County v. Coleman*, 99 Pa. St. 6;  *People v. Brooklyn*, 4 Cow. 419; *Faribault v. Misener*, 20 Minn. 326.   In case of poll tax, the law generally, as in case of the city charter, defines the purposes to which the fund so raised shall be applied.    *State ex rel. v. Cobb*, 8 S. C. 123;  *Schaffer v. Robinson*, 59 Ala. 195;  *Woodward v. Isham*, 43 Vt. 123.    (4) Nor is it in conflict with section 9 of article 2, or section 4 of article 8 of the constitution.    (5) The provision here involved is consonant with public policy in that it enlarges participation in public affairs.

*H. C. McDougal*, city counselor, and *O. H. Dean* also for respondent.

BRACE, C. J.—By section 39 of article 17 of the charter of Kansas City it is provided that:

"Every male person over the age of twenty-one years who shall be a resident of Kansas City shall be assessed for each year in which a general election is held a poll tax of two dollars and fifty cents, which shall be collected and paid in the same manner as any other personal tax; provided, however, that if the person so assessed shall vote at the general city election held in the year for which such tax is levied, and shall receive a certificate from the recorder of voters that he has voted at such election, or shall otherwise establish in such manner as may be provided by ordinance that he has so voted, such certificate or proof shall operate to extinguish such tax for such year; but a failure to pay such tax shall not disqualify any person from voting. The first assessment of such poll tax shall be made for the year 1890. All moneys collected under this section shall be used for sanitary purposes."

This is an appeal from a judgment of the circuit court of Jackson county, in favor of plaintiff, against the defendant, for the amount of the tax provided for in this section, and for which he is liable under its provisions, if the section is a valid law, in which case the judgment should be affirmed, and this is the only question raised upon the record herein.

1. It may be conceded, so far as legislative power is concerned, that this provision of the city charter has equal authority within the limits of Kansas City, over its citizens, as a like enactment of the legislature would have over the citizens of the state at large, and that it ought to be upheld unless in conflict with the constitution of the United States, or of this state. *State ex rel. v. Field*, 99 Mo. 352.

It may also be conceded that the legislative authority in this state has power to levy a capitation tax subject to the constitutional provision that the same shall be levied "for public purposes only" * * * and

"shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax." Const., art. 10, sec. 3; *Glasgow v. Rowse*, 43 Mo. 479; *Am. Union Express Co. v. St. Joseph*, 66 Mo. 675; *Tipton v. Norman*, 72 Mo. 380.

Taxes of this character in one form or another have been imposed by statute ever since the organization of the state government, as well as before. 1 Terr. Laws, pp. 34 and 37, secs. 1 and 9; 2 Laws of Mo. 1825, p. 663, sec. 1; R. S. 1835, p. 529, secs. 1 and 3; R. S. 1845, pp. 927 and 928, secs. 1 and 3; R. S. 1855, pp. 1322 and 1324, secs. 1 and 5; G. S. 1865, pp. 95 and 96, secs. 1 and 7; R. S. 1879, secs. 6944, 6945, 6947; R. S. 1889, sec. 7809 *et seq.* These taxes have always been imposed on a certain class only of the citizens of the state, and it may further be conceded that the constitutional requirement of uniformity is satisfied whenever all citizens of the same class are taxed alike. *St. Louis v. Bowler*, 94 Mo. 630.

Applying these principles to the charter provision in question it must also be conceded that, if section 39 was stripped of its proviso, it would be a legitimate expression of the taxing power of the city, whereby an equal tax is levied upon all citizens of a certain natural and well defined class. This uniformity is, however, at once destroyed by the proviso which, in effect, exempts from the payment of such tax every registered voter of that class who has voted at the general city election in the year in which the tax is levied, thus discriminating between the subjects of taxation in the same class in violation of the constitutional provision quoted. *St. Louis v. Spiegel*, 75 Mo. 145.

In the language of Judge COOLEY: "Inequality does not necessarily follow the restricting of a tax to a few subjects only, or even to a single subject. * * * But when, for any reason, it becomes discriminative

between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible. It is immaterial on what ground the selection is made * * * for if the principle of selection be once admitted limits can not be set to it, and it may be made use of for the purposes of oppression, or even of punishment." Cooley on Taxation [2 Ed.], pp. 169, 170.

2. The section in question is an apt illustration of the manner in which such a principle of selection may be used for the purpose of punishment, under the guise of a tax for "public purposes," for no one can read this charter provision as a whole without coming to the conclusion that its purpose is to impose a penalty upon the voters of Kansas City for not voting rather than for the purpose of raising revenue to maintain a necessary function of the city government. In fact the greater part of the argument of the learned counsel for the respondent is directed to the maintenance of the proposition that, to require a citizen to vote, under penalty, is a legitimate exercise of legislative authority in this state.

In support of this proposition our attention has been called to the important character of the high trust committed to the voter, and the necessity of its discharge to the public welfare, and hence a duty to vote is deduced, upon the part of all those on whom the right is conferred which it is argued ought to be enforced by compulsory legislation. In support of this argument we are cited to the views expressed by John Stuart Mill in his work on Representative Government, by Hon. Benjamin Butler, late governor of Massachusetts, and by Senator Hill, late governor of New York, respectively, in their messages to the general assembly of those states, to the views expressed by

Frederick William Holls in Annals of the American Academy of Political and Social Science for April, 1891, and by the learned judge who tried this case below, in his opinion printed in the brief of counsel for respondent.

The whole force of the argument in these interesting and instructive papers is spent in the concession that by them the exercise of the elective franchise is established to be a duty, as well as a right or privilege —a concession which for the purpose of this case, may be made, and yet the main proposition remain unestablished, i. e., that it is such a duty as may be enforced by compulsory legislation.

The law is not always what it ought to be according to the views of many learned, thoughtful and experienced publicists. It is not every duty which a citizen in a republican government may owe to his fellow citizens, and to his government, that he can be constrained to perform. For the performance of many of these duties reliance must be placed only on the enlightened conscience of intelligent and patriotic freemen. For it is never to be forgotten that while the citizens of this great republic are the *subjects* of government, whose duties as such may be enforced by the sovereign will, as expressed in the law of the land, they are also its sovereign,—a sovereign, it is true, having but a single sovereign power— *the power of the ballot*—by the exercise of which, however, all other governmental powers and duties are created, and to which they are subordinate, and in the exercise of which alone does the citizen find his prerogative of sovereignty in the normal operations of a representative republican government.

It detracts nothing from the dignity and character of this power that in this state, under its organic law,

the power is limited to a certain class of its citizens, and the mode and manner of its exercise in pursuance thereof is regulated by law. The power is a sovereign power, and in the exercise of it the citizen who possesses it acts as a sovereign; and, standing in the relation of a sovereign to such power, he must have the supreme and independent right of a sovereign to exercise it or not, else it ceases to be a sovereign right.

That it is not within the power of any legislative authority, national or state, to compel the citizen to exercise this sovereign right, seems to have been the common understanding of our people from the beginning of our national existence, for, notwithstanding the diligent research of counsel for respondent, and our own investigations in that direction, no other legislative enactment of the character of the one in hand has been, nor do we believe can be, found. The municipality of Kansas City in this enactment seems to have been the pioneer and sole adventurer into this field of legislation in this country, since the revolution. The only precedents for it, to which we have been cited, are to be found in the legislation of some of the colonies at periods when they derived their legislative authority from the crown and parliament of England. The rights of the citizens of those colonies were *then* simply those of subjects, *their duty* to obey the sovereign mandates in the exercise of the elective franchise, the same as in all other matters—a condition so intolerable to our forefathers that they thought the sacrifices of a war of seven years not too great a price to pay for emancipation from its thraldom, and for the proud privilege of becoming sovereigns of a government of their own creation, of which, at the same time, they became the willing subjects.

Such legislation, having for its source monarchical power, can not be invoked as a precedent for legislation

in a government created to perpetuate the principle of popular sovereignty. It subverts the principle, and eliminates from our form of government the idea of sovereignty of the citizen, for as said before if suffrage is a sovereign right of the citizen, he must be as free, according to the dictates of his own untrammeled will and conscience, not to exercise it, as to exercise it on any particular occasion; otherwise the right is not sovereign.

As no precedent for such legislation can be found in the history of the government, of course no adjudicated case can be found directly supporting it, but we are cited to a class of cases in which it is held that a citizen elected to a public office may be compelled to qualify therefor and enter upon the discharge of its duties; which, it is contended, does by way of analogy support it.

It is seen at once, however, that the analogy fails when we consider that the duty of a citizen elected by the sovereign will to an office created by the sovereign power, is the duty of a subject, while the duty in question here is the duty of the sovereign himself. Of like character with the former is also the duty of the citizen when he is called on to bear arms, serve on juries, etc. By no such duties as these can the duty of a citizen as an elector be measured.

The right of suffrage is the basis upon which the whole superstructure of our government rests. The right to exercise it when once conferred must be supreme and independent, and the offices of the departments of government created by it must be confined to providing ways and means simply for its orderly exercise. In our organic law it is conferred upon a certain class of the citizens of the state and the way and mode of its exercise in an orderly manner provided for. Art. 8, Const. of Mo. Farther control than this over

the right, neither this nor any other state of the Union has, so far as we are advised, ever attempted to go. On the contrary, in the spirit of the construction we have placed upon this right, our organic act in another article declares that, "no power, civil or military, shall at any time interfere to prevent the *free* exercise of the right of suffrage." Art. 2, sec. 9, Const. of Mo. How can a citizen be said to enjoy *the free* exercise of the right of suffrage who is constrained to such exercise, whether he will or not, by a penalty?

In whatever light we view this charter provision, whether as imposing a tax upon each male resident of Kansas City over the age of twenty-one years who don't vote whether he can or not, or as a penalty imposed upon those that don't vote who can, it is obnoxious to the provisions of the organic law which secures to every citizen protection against partial and discriminative taxation, and against invasion of his sovereign right of suffrage, and must be held to be void and of no effect.

3.    Before closing the opinion, however, it may be well to notice another point made by counsel for respondent, in which the discriminative character of this legislation, regarded as a statute imposing a tax is sought to be avoided by comparing the provision made for the payment of the tax, *by voting*, to the exemption (sometimes provided, by laws which have been upheld) from a general poll tax, of those who perform public service in a voluntary fire department, or by working the public highway, etc.

But these are not strictly exemptions. Taxes may be levied in money or in services having a money value to the public, and he who pays in money does not necessarily have to pay more or less than he who pays in service, and *vice versa*; and it is upon this principle that these laws have been upheld. But who can estimate the money value to the public, of a vote? It is

degrading to the franchise to associate it with such an idea. It is not service at all, but an act of sovereignty above money and above price. The ballot of the humblest voter in the land may mould the destiny of the nation for ages. Who can say it will be for weal or woe to the republic? Who that it is better that he should cast, or withhold, it? Who dares to put a price upon it? The judgment of the circuit court is reversed. All concur.