[File No. 7188]

NORTHWESTERN IMPROVEMENT COMPANY, a corporation, Respondent, v. COUNTY OF MORTON, a Municipal Corporation, Appellant.

(47 NW2d 543)

Opinion filed April 12, 1951

*E. T. Christianson,* Attorney General, *Nels G. Johnson,* Special Assistant General and *C. J. Schauss,* State's Attorney, for appellants.

*E. T. Conmy* and *E. T. Conmy, Jr.*, for respondent.

*Cox, Cox & Pearce*, Amici Curiae.

ILVEDSON, District J. This is an action to set aside certain tax liens claimed by Morton County on coal and iron rights held by the plaintiff on lots 3 and 4 and the east half of the southwest quarter of section 19, township 137 north, range 82 west in Morton County, North Dakota. The tax enactment under attack in this case consists of Sections 57–4901, 57–4902 and 57–4903 of the 1949 Supplement to the NDRC 1943:

"57–4901. Privilege Tax Imposed. For the privilege of holding mineral rights in real property when severed from the surface rights therein by reservations in deeds conveying such surface rights without development thereof by mining operations, there is hereby imposed annually an excise tax of three cents per acre measured by the number of acres in the tract conveyed or in the rights reserved, in case such reservation in a reservation of mineral rights in or underlying a less acreage, in which case the lesser number of acres shall determine the tax.

"When such mineral rights are developed by mining operations, such excise tax shall cease. This excise tax shall not apply to mineral leases held for development purposes.

"57–4902. Levy and Collection. The Register of Deeds shall furnish the County Auditor with such information as is contained in his office and as will enable said Auditor to prepare a list setting forth the mineral rights as described in Section 1 of this Act (57–4901), together with the name and address of the holder of such mineral right when severed from the surface right. The County Auditor shall place such mineral reservations upon the tax rolls of his county and shall levy the tax hereby imposed against the owner of such mineral reservations as may appear from said records. Such tax so levied and shown by the tax rolls shall be collected by the county treasurer as property ad valorem taxes are collected. Such tax shall be subject to a lien upon the mineral reservation only as ad valorem taxes upon the surface rights are subject to a lien, and such lien

shall be enforced in like manner as ad valorem tax liens are enforced.

"57–4903. Apportionment of Tax. Each county treasurer shall apportion such tax when collected to the school district and the township in which the mineral reservation lies, in the ratio which the tax levy of said school district and township have to the total levies of both the school district and township."

The complaint is in form an action to quiet title with an additional allegation that the law under which the tax lien is claimed by Morton County is unconstitutional. The case was submitted to the trial court upon the pleadings and it is admitted by the defendant Morton County that all of the allegations in the complaint, with the exception of paragraph VI alleging the tax law to be unconstitutional, are the true facts. The trial court held the tax statute to be unconstitutional and the defendant now appeals to this court. The complaint states that on December 6, 1909, the Northwestern Improvement Company, a New Jersey corporation, the then owner of the property above described, sold and conveyed the property to one Olof S. Carlson, reserving, however, ownership of the mineral and mineral rights as follows: "excepting and reserving unto the party of the first part, its successors and assigns, forever, all coal and iron upon or in said land, together with the use of such of the surface as may be necessary for exploring for, and mining and otherwise extracting and carrying away the same. But the party of the first part, its successors and assigns, shall pay to the party of the second part, or to his heirs or assigns, the market value at the time mining operations are commenced, of such portion of the surface as may be used for such operations, including any improvements thereon; the party of the second part, his heirs and assigns, shall notwithstanding have at all times the right to mine and remove such reasonable quantity of coal as may be necessary for his own domestic use."

The complaint further states that this company thereafter sold and conveyed the said mineral rights so reserved to the plaintiff, the Northwestern Improvement Company, a Delaware corporation; that the plaintiff is now the owner of the said mineral rights

and mineral reserves and has not developed them by mining operations but is holding them for later development if and when it appears they can be developed at a profit; that the defendant claims certain interests or liens on said property adverse to the plaintiff. Paragraphs V, VI, VII, and VIII of plaintiff's complaint are as follows:

## V.

"That defendant's claim of an interest in and tax lien on said property is based upon a so-called privilege or excise tax which was spread and levied against said property for the year 1947 in amount $4.80, under authority of Chapter 57–49 of the 1947 Supplement to the North Dakota Revised Code of 1943 and which reads as follows:

(Sections 57–4901, 57–4902 and 57–4903 have been hereinbefore set forth in this opinion.)

## VI.

"Plaintiff alleges that Chapter 57–49 of the 1947 Supplement is unconstitutional, not uniform, arbitrary, illegal and void, deprives plaintiff of its property without due process and denies plaintiff equal protection of the laws and it and the taxes levied thereunder as above set out are wholly illegal and void, because of being in contravention of and prohibited by the following constitutional provisions of the State of North Dakota and the United States of America.

" 'Taxes shall be uniform upon the same class of property including franchises within the territorial limits of the authority levying the tax.'—Section 176 of Constitution of State of North Dakota.

" 'No tax shall be levied except in pursuance of law, and every law imposing a tax shall state distinctly the object of the same, to which only it shall be applied.'—Section 175 of Constitution of North Dakota.

" 'All laws of a general nature shall have a uniform operation.'—Section 11 of Constitution of State of North Dakota.

" 'No special privileges or immunities shall ever be granted

which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens.'—Section 20 of Constitution of the State of North Dakota.

" 'No person shall be . . . deprived of life, liberty or property without due process of law.'—Section 13 of Constitution of State of North Dakota.

"No state shall 'deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws.'—Article XIV of the Amendments of the Constitution of the United States."

## VII.

"Plaintiff alleges that there are many mineral reservations or mineral rights in Morton County and the State of North Dakota not created by reservations in deeds conveying the surface and many leases of minerals and mineral rights where development by mining operations has not been had and is only contemplated in the future if and when such operations appear desirable and practical."

## VIII.

"That this plaintiff is the owner of numerous similar mineral reservations or rights in Morton County and in the State of North Dakota and many others are similarly situated and this action is brought for the benefit of plaintiff and for others similarly situated."

In considering this case, we re-affirm what this court said in State ex rel. Haggart v. Nichols, 66 ND 355, 265 NW 859, as to the fundamental rules which must be applied in any case involving a consideration of the constitutionality of an act passed by the legislature. We held in that case:

"A legislative enactment is presumed to be constitutional. This presumption is conclusive unless it is clearly shown that the enactment contravenes some provision of the Constitution of the state or of the United States.

"It is not the function of the courts to review or revise legisla-

tive action but to ascertain and give effect to the legislative will as expressed in the constitution and the statutes. When a legislative enactment is held void it is not because the courts have or exercise any control over the legislative power, but because the will of the people as expressed in the constitution is paramount to that of their representatives as expressed in the statute; and it is the duty of the judges under their oaths of office to give effect to the will of the people as expressed in the fundamental law."

A considerable portion of the briefs submitted in this case is spent on the claim on the Appellant that the tax law under consideration is a privilege and excise tax and therefore not within the provisions of Section 176 of our State Constitution. It is contended that this constitutional provision applies only to property taxes. The Respondent, however, argues that this so-called privilege tax is in fact a property tax and therefore violates Section 176 for the reason that the tax is not uniform upon the same class of property. As interesting a question as this poses, we find as we did in State ex rel. Haggart v. Nichols, supra, wherein it is stated in the opinion on page 363:

" 'The view which we take of the matter renders it unnecessary to consider whether or not the law under discussion imposed' an excise tax or a property tax (Cream of Wheat Co. v. Grand Forks County, 253 US 325, 328, 64 L ed 931, 933, 40 S Ct 558), for the members of the court are all agreed that under Sections 176 and 179 of the state constitution the legislature has wide discretionary powers to classify property for the purposes of taxation, and *that the standard of uniformity under section 176 of the state constitution is substantially the same as the standard of equality under the Fourteenth Amendment to the constitution of the nation.* The pivotal question as to the validity of the tax therefore becomes one as to the power of the legislature to provide for the imposition thereof under the conditions prescribed in the act rather than the particular name to be attributed to it. Grand Forks County v. Cream of Wheat Co. 41 ND 330, 340, 170 NW 863; State ex rel. Fargo v. Wetz, 40 ND 299, 318, 168 NW 835, 5 ALR 731; Wagner v. Covington, 251 US 95, 102, 64 L ed 157, 167, 40 S Ct 93.

" 'There is no particular magic in a name, or even in a legislative designation of a particular form of taxation. Though the legislature may call that which is distinctly a tax by some other name, it nevertheless remains a tax.' State ex rel. Fargo v. Wetz, 40 ND 299, 318, 168 NW 835, 5 ALR 731. . . .

" 'It hardly is necessary to repeat,' said the Supreme Court of the United States (Wagner v. Covington, supra) 'that when this court is called upon to test a state tax by the provisions of the Constitution of the United States, our decision must depend not upon the form of the taxing scheme, or any characterization of it adopted by the courts of the state, but rather upon the practical operation and effect of the tax as applied and enforced. The state court could not render valid, by misdescribing it, a tax law which in substance and effect was repugnant to the Federal Constitution; neither can it render unconstitutional a tax that, in its actual effect, violates no constitutional provision, by inaccurately defining it'. . . .

" 'It will be noted first that Section 176 no longer commands the legislature to provide for the taxing of all property by uniform rule, *according to its true value.* . . . *The only limitation upon the power of the legislature to thus classify property is the 14th Amendment to the Federal Constitution, which, by requiring equal protection of the laws, precludes purely arbitrary classification.'* " (Emphasis supplied.)

One of the citations in the opinion rendered in State ex rel. Fargo v. Wetz, supra, is the case of Bell's Gap Railroad Company v. Commonwealth of Pennsylvania, 134 US 232, 33 L ed 892, 10 S Ct 533. In this case Justice Bradley delivered the opinion and stated on page 895:

"The provision in the XIVth Amendment, that no State shall deny to any person within its jurisdiction the equal protection of the laws, was not intended to prevent a State from adjusting its system of taxation in all proper and reasonable ways. . . . But clear and hostile discriminations against particular persons and classes, especially such as are of an unusual character, unknown to the practice of our governments, might be obnoxious to the constitutional prohibition. It would, however, be impracticable and unwise to attempt to lay down any general rule or

definition on the subject, that would include all cases. They must be decided as they arise. . . . The general purpose and scope of the XIVth Amendment, and the general qualifications necessary to be applied to it, are well stated in Barbier v. Connolly, 113 US 27, 31 (28:923, 924). Mr. Justice Field, in delivering the opinion of the court, there said: 'The XIVth Amendment, in declaring that no "State shall deprive any person of life, liberty or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws," undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; . . . that no impediment should be interposed to the pursuits of anyone except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition.' "

In regard to the effect of the Fourteenth Amendment on excise taxes and taxation in general, American Jurisprudence has the following to say:

"Even though it is frequently stated or implied that express constitutional requirements of equality and uniformity in taxation are not applicable to excise taxes, it seems more correct to say that the effect of such requirements upon excise taxes, although not the same as that with respect to property taxes, is not entirely nonexistent, and that they operate, whether they have been expressly construed as applicable to excises or not, to require that the burden imposed shall fall alike on all persons who are in substantially the same situation and to prohibit the creation of arbitrary and unreasonable discriminations." 51 Am Jur 212, Taxation, sec 159.

In Gunn v. Mpls., St. P. & S. Ste. M. R. Co., 34 ND 418, 158 NW 1004, we stated in the opinion on page 424:

"The true test of unlawful statutory discrimination is merely whether all who are similarly situated are similarly treated or affected, or, to put it another way and in the language of the

business world, whether one is really hindered in his competition with others." See Gamble-Robinson Fruit Co. v. Thoresen, 53 ND 28, 42 ALR 1039, 204 NW 861; Vermont Loan & Trust v. Whithed, 2 ND 82, 49 NW 318.

In the very recent case decided by our Court, F. W. Woolworth Company v. Gray, 46 NW2d 295, we stated:

"Sections 11 and 20 of the State Constitution do not nor does the Fourteenth Amendment to the Constitution of the United States prohibit or prevent classification provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration. 59 CJ 722, Sec 309; 12 Am Jur, Constitutional Law, Sec 476, pp 140–142."

The Iowa Supreme Court quotes Judge Cooley:

"The fourteenth amendment to the Constitution of the United States, among other things, provides that no state shall deny 'to any person within its jurisdiction the equal protection of the laws.' As Judge Cooley stated in his excellent work on 'The Law of Taxation' (4th Ed.), Volume I, section 249: 'There is no question as to the applicability of this provision to taxation. The provision imposes a limitation upon all the powers of the state which can touch the individual or his property, including among them that of taxation.' The text is supported by numerous decisions of the state and federal courts." Pierce v. Green, 229 Iowa 22, 294 NW 237, 131 ALR 335.

In Tennessee a tax law was enacted that imposed a tax on the privilege of doing business in the state as a partnership while leaving individuals in the same line of business untaxed. The Supreme Court of that state held in Corn et al. v. Fort, 170 Tenn 377, 95 SW2d 620, 106 ALR 647, that it was an "arbitrary and capricious" classification in violation of a state constitutional provision that no one shall in any manner be deprived of his liberty or property but by judgment of his peers or by the law of the land, and of the equal protection clause of the XIVth Amendment to the Federal Constitution. The court stated in its opinion:

"While the Legislature has a wide range of discretion in the matter of imposing privilege taxes, it cannot arbitrarily exclude one set of individuals from the operation of a privilege tax and include another set. The act here in question excludes from its operation individuals, engaging as such, in any business, but includes two or more individuals who have agreed to join their efforts, as partners, in a common enterprise. There exists some reason for imposing the tax on corporations, as hereinbefore shown, but we can see no substantial reason for imposing this tax on a simple partnership, composed of individuals, and exempting the single individuals, who may, perhaps, be engaged in the same kind of business as the partnership."

In Williams v. City of Richmond, 177 Va 477, 14 SE2d 287, 134 ALR 833, a license tax with a "catch-all" provision was held unconstitutional. It was urged to the court that a classification had been made, and, so long as the burden of the license tax was the same on all members of a particular class, no objection can be made that there was a denial of the equal protection of the laws guaranteed by the Fourteenth Amendment. In answer to this argument, the court stated in the opinion:

"A wide discretion is allowed the legislative power in making classifications of trades and businesses which may be made subject to a license tax. If the classification is neither capricious nor arbitrary and rests upon some reasonable consideration of differences it is usually inoffensive to the equal protection provision of the Constitution. State Board of Tax Com'rs. of Indiana v. Jackson, 283 US 527, 51 S Ct 540, 75 L ed 1248, 73 ALR 1464, 75 ALR 1536.

"A classification will not be sustained, however, where it is arbitrary or capricious, and rests on no substantial or reasonable basis."

In one respect the case before us is similar to the case of Kansas City v. Whipple, 136 Mo 475, 38 SW 295, 58 Am St Rep 657, 35 LRA 747. The Supreme Court of that state was considering the constitutionality of an ordinance that imposed a poll tax. This was not an ordinary poll tax for there was a provision in the law that the tax was not required to be paid by one who voted at the general city election for that year. In the case at

bar, the tax is levied for the "privilege of holding mineral rights . . . by reservations in deeds . . . without development thereof by mining operations." In the Missouri case if you voted the poll tax did not apply. In the case before us if the land is being developed the "privilege" tax does not apply. The Supreme Court of Missouri stated:

" . . . This uniformity is, however, at once destroyed by the proviso which, in effect, exempts from the payment of such tax every registered voter of that class who has voted at the general city election in the year in which the tax is levied, thus discriminating between the subjects of taxation in the same class in violation of the constitutional provision quoted. . . . In the language of Judge Cooley: 'Inequality does not necessarily follow the restricting of a tax to a few subjects only, or even to a single subject. . . . But when, for any reason, it becomes discriminative between individuals of the class taxed, and selects some for an exceptional burden, the tax is deprived of the necessary element of legal equality, and becomes inadmissible. It is immaterial on what ground the selection is made . . . for if the principle of selection be once admitted, limits cannot be set to it, and it may be made use of for the purposes of oppression, or even of punishment.' Cooley on Taxation, (2 Ed.), pp 169, 170."

It is admitted in this action that there are many mineral rights in Morton County and the State of North Dakota not created by reservations in deeds conveying the surface rights. In other words, there are many people who purchased mineral rights outright by direct conveyance from the owner of the surface rights or further along in the chain of title. The complaint shows that the plaintiff owns some of these rights by direct purchase.

"The term 'mineral right' has a well-recognized meaning. It is the right or title to all, or to certain specified, minerals in a given tract." 58 CJS Mines & Minerals, p 39.

It is pointed out by Respondent in its brief that this 1947 tax law is not only arbitrary but very unworkable. Not only would all those who own undeveloped mineral rights by direct conveyance escape the burdens of this tax law, but even those whose mineral rights come under the act can circumvent the law by

mining a few tons of coal a year. The law does not explain what is meant by "without development thereof by mining operations." There is no yardstick of measurement in this regard. The Respondent also argues that "It would be a simple matter to sell a piece of land in toto then take back a grant or deed to the minerals" and thus avoid being taxed, and that the "man who conveyed the surface and reserved the minerals before the passage of this law finds himself subject to the tax, while the man who happened to take a direct grant back is not."

It is obvious to this court that the manner or method by which mineral rights are severed from the surface of the land cannot be made the sole basis of the classification of such mineral rights for taxation purposes. See Northwestern Improvement Company v. State, 57 ND 1, 220 NW 436.

"The severance of a mine and the surface of lands may be accomplished by a conveyance of the mines and minerals, or by a conveyance of the land with a reservation or exception as to the mines and minerals.

"After severance, the surface and minerals are held by separate and distinct titles in severalty, *and each is a freehold estate of inheritance.*" Beulah Coal Mining Co. v. Heihn, 46 ND 646, 180 NW 787; 58 CJS 306, 328; Whiles v. Grand Junction Mining & Fuel Co., 86 Colo 418, 282 Pac 261; Jensen v. Sheker, 231 Iowa 240, 1 NW2d 262; Ohio Oil Co. v. Wyoming Agency, 63 Wyo 187, 179 Pac2d 773.

Since it is clear that the tax statutes before us apply a flat rate of three cents per acre *solely* to the mineral rights undeveloped by mining operations and severed from the overlaying strata or surface rights *by an express reservation of such mineral rights in the deed conveying the surface rights,* the said tax statutes are discriminatory, unreasonable and arbitrary and in violation of the rights granted all persons by the Fourteenth Amendment to the Federal Constitution and are void. The judgment is affirmed.

MORRIS, C. J., and GRIMSON, CHRISTIANSON and BURKE, JJ., concur.

SATHRE, J., being disqualified, did not participate, Hon. ROY A. ILVEDSON, Judge of the Fifth Judicial District, sitting in his stead.