Carl T. CHRISTMAN, Plaintiff/Appellant,

v.

Florian EMINETH et al., Defendants,

The Federal Land Bank of Saint Paul, St. Paul, Minnesota, Defendant/Appellee.

Civ. No. 8900.

Supreme Court of North Dakota.

Oct. 1, 1973.

Rehearing Denied Dec. 4, 1973.

Harvey J. Miller, Dickinson, and Sperry & Schultz, Bismarck, for plaintiff/appellant.

Pearce, Anderson, Pearce, Thames & Pearce, Bismarck, for defendant/appellee.

Conmy, Feste, DeMars & Bossart, Fargo, amicus curiae on behalf of Burlington-Northern.

E. J. Rose, Bismarck, amicus curiae.

ERICKSTAD, Chief Justice.

The plaintiff, Carl T. Christman, appeals from a judgment of the district court of Morton County which held that the defendant, The Federal Land Bank of Saint Paul, was the holder of fee simple title to fifty per cent of all the oil, gas and other minerals, including lignite coal, in or under certain lands situated in Oliver County, North Dakota, together with the right to enter upon the surface of the land to explore for and remove said minerals.

On September 7, 1940, The Federal Land Bank of Saint Paul acquired title to the N½ of Section 33 and the SW¼ and SW¼ NW¼ of Section 34, in Township 142 North, Range 83 West, in Oliver County, North Dakota, through a sheriff's deed issued by the sheriff of Oliver County upon a foreclosure of a mortgage. The deed was duly recorded.

On October 19, 1940, The Federal Land Bank sold said lands to Florian Emineth and Magdalena Emineth under contract for deed for the sum of $3,200.

On October 22, 1943, pursuant to said contract for deed, The Federal Land Bank, as grantor, executed and delivered to Florian and Magdalena Emineth its limited warranty deed, which was duly filed and recorded. Said deed contained the following clause:

"Excepting and reserving to the party of the first part and its successors and assigns fifty per cent of all right and title in and to any and all oil, gas and other minerals in or under the foregoing described land with such easement for ingress, egress and use of surface as may be incidental or necessary to use of such rights."

On January 7, 1954, Florian and Magdalena Emineth executed and delivered a warranty deed to Conrad B. Miller and Lora B. Miller which was duly filed in the office of the register of deeds. Said deed contained the following clause:

"Excepting therefrom and reserving to the grantors an undivided one-half interest in all oil, gas and other minerals of every kind, nature or description in, upon and under all of said lands and now owned by the grantors or either of them, and reserving to the grantors an easement for ingress to and egress from said lands and such use of the surface thereof as may be incidental or necessary to the use of such oil, gas and other mineral rights * * *"

On November 19, 1964, The Federal Land Bank filed a notice of claim to "an undivided 50% interest to all right, title and interest in and to all minerals, in, on, or under the surface of said * * * land", which was duly recorded.

On October 4, 1966, Conrad B. Miller, a widower, executed and delivered a warranty deed to Carl T. Christman conveying said lands to him. This deed was filed and duly recorded. It contained a clause saying the conveyance was "subject to all reservations and exceptions of record."

On September 30, 1968, Mr. Christman brought an action to quiet title to the N½ of Section 33, and the SW¼ and SW¼ NW¼ of Section 34, all in Township 142 North, Range 83 West, Oliver County, North Dakota. The action was transferred from Oliver County to Morton County for the purpose of trial only.

Joined as defendants were: Florian Emineth and Magdalena Emineth; William M. Mutz and William K. Engelter, claimants of a ⅛ interest in all oil, gas and other minerals pursuant to a mineral deed from Florian and Magdalena Emineth dated January 13, 1954; Minnkota Power Cooperative, Inc., the holder of a warranty deed from Carl Christman for 111.09 acres of the N½ of Section 33, dated September 30, 1966; and The United States of America.

Due and legal service of process was made upon all of the defendants. The action against Minnkota Power Cooperative, Inc. was settled and dismissed, taking its 111.09 acres in the N½ of Section 33 out of this case. The action against the United States of America was dismissed and The Federal Land Bank of Saint Paul was joined as a defendant. The remainder of the defendants defaulted, leaving The Federal Land Bank as the sole defendant.

Mr. Christman alleged that lignite coal was not a mineral and therefore was not included within the term "other minerals" as used in the various deeds mentioned previously. He therefore asked that The Federal Land Bank's claim to the lignite coal in or under the land in question be adjudged null and void and that he (Christman) be adjudged the owner in fee simple of all the lignite coal found in or under the land.

Mr. Christman later amended his complaint to include the allegation that the exception and reservation of mineral rights in the transfer from The Federal Land Bank to the Emineths in 1943 did not recite a reservation to said grantor of the coal deposits in said property and did not contain an accurate description of any coal reserved to grantor, its nature, length, width and thickness, all as required by Sections 47–10–21 and 47–10–22 of the North Dakota Century Code.

In addition to a general denial, The Federal Land Bank answered by alleging:

(1) That lignite coal is a mineral, and as such it is included in the exception contained in the limited warranty deed of 1943;

(2) That it is the owner of an undivided 50% of all right and title in and to any and all minerals (including coal) in and under the premises described in the complaint, together with an easement for in-

gress and egress and the use of surface thereof as may be incidental or necessary to the use of such rights; and that Mr. Christman has no right, title or interest in that portion of the minerals;

(3) That Sections 47–10–21 and 47–10–22, N.D.C.C., being Chapter 304 of the North Dakota Session Laws of 1911, are not applicable to the exception contained in the limited warranty deed in issue; and,

(4) That if said sections are construed and applied to the limited warranty deed, such interpretation and application would render them unconstitutional and wholly null and void upon the grounds:

(a) That by only applying to ownership of mineral rights reserved in deeds, and not covering ownership of mineral rights, including coal, otherwise conveyed or transferred, they grant privileges and immunities to classes of citizens not granted to all citizens, in violation of Section 20 of the Constitution of the State of North Dakota;

(b) That they violate Section 11 of the State Constitution requiring that all laws of a general nature be uniform in operation;

(c) That they impair the obligation of a contract, in violation of Article I, Section 10 of the United States Constitution, and Section 16 of the State Constitution;

(d) That they deny to the defendant the equal protection of the law; and,

(e) That they deprive the answering defendant of its property without due process of law.

The trial court concluded:

(1) That the word "mineral" contained in the exception of the limited warranty deed of 1943 should be construed in its ordinary and popular sense to include lignite coal, so as to render it consistent with common usage and prevailing practice;

(2) That there is a distinct difference in legal meaning and effect beween the words "reservation" and "exception" and that The Federal Land Bank retained title to the minerals in question by means of an exception;

(3) That Section 47–10–21, N.D.C.C., applied only to a reservation and not to exceptions; and

(4) That Section 47–10–21, N.D.C.C., if applied to exceptions, would be unconstitutional, as a taking of property without due process of law, an impairment and denial of freedom of contract, and a denial of equal protection of the law under the provisions of the North Dakota and Federal Constitutions.

The trial court therefore held that:

(1) Carl Christman was the owner in fee simple of all the surface of the lands described in the complaint subject to the right of The Federal Land Bank to enter upon that surface to explore, mine, extract and remove 50% of all of the oil, gas and other minerals including lignite coal embedded in or lying in or under the land;

(2) The Federal Land Bank was the owner in fee simple of 50% of all oil, gas and other minerals including coal lying in and under the premises in question; and

(3) Carl Christman was the owner in fee simple of the remaining 50% of all oil, gas and other minerals including coal lying in and under the premises.

The first question we must consider is whether lignite coal is a mineral within the intention of the parties when they included the term "other minerals" in the limited warranty deed of 1943.

■ Mr. Christman first contends that whether lignite coal is a mineral is a question of fact and not a question of law and that, therefore, evidence is required to establish that fact. That identical contention was considered and rejected last fall by this court in Abbey v. State, 202 N.W.2d 844, 855 (N.D.1972).

Mr. Christman next contends that lignite coal is not a "mineral". In 1945 this court was asked to determine whether the Legislature intended that coal be reserved in all transfers of land by any county when it said, " * * * there shall be reserved to such county transferring such land fifty per cent (50%) of all oil, natural gas, and/or mineral which may be found on or underlying such land." Chapter 136, 1941 Session Laws of North Dakota.

This court, after saying that "mineral" is a term susceptible to limitation or extension according to the intention with which it is used, said:

"We have found no cases holding that coal is not a mineral. Wherever the question has been considered the courts have construed the term 'mineral' to include coal. [Citations omitted.] We, therefore, reach the conclusion that the term 'mineral' as used in ·Ch. 136, Sess. Laws N.D.1941, includes coal." Adams County v. Smith, 74 N.D. 621, 23 N.W. 2d 873 at 875 (1946).

The reasoning of *Adams County* was recently applied in Abbey v. State, 202 N.W. 2d 844 (N.D.1972), where we construed the language of N.D.R.C.1943, Section 38–0901, to include coal. That statute provided that in every transfer of land by the State of North Dakota "fifty percent of all oil, natural gas, or minerals" shall be reserved to the State.

This court construed similar statutory language in the 1959 case of Salzseider v. Brunsdale, 94 N.W.2d 502 at 503 (N.D. 1959), in order to determine whether the word "mineral" included gravel. The court said: "In construing the word 'minerals' * * * we cannot do so according to the classifications of animal, vegetable or mineral nor according to the classifications of organic and inorganic substances. To do so would include within the definition of 'minerals' a varying but in many cases a very substantial part of the soil itself and exclude * * * such purely organic substances as oil, gas and coal, which at least in this locality are commonly regarded as 'minerals'."

Pertinent are two statutes: "Grants shall be interpreted in like manner with contracts in general * * *" Section 47–09–11, N.D.C.C. "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting so far as the same is ascertainable and lawful. * * *" Section 9–07–03, N.D.C.C.

Star Drilling, Inc., in its Amicus Curiae brief, has suggested that we apply the rule of "ejusdem generis".

"Under the principle of ejusdem generis, general words following particular and specific words are not given their natural and ordinary sense, standing· alone, but are confined to persons and things of the same kind or genus as those enumerated." Savelkoul v. Board of County Com'rs Ward County, 96 N. W.2d 394, 395, Syllabus ¶ 1 (N.D.1959).

It has been argued that coal is not similar to oil and gas because while it is a "hard" mineral, fixed and confined to one place, oil and gas are liquid and migratory in nature. However, if we are to accept those distinctions, we must also acknowledge similarities which exist with respect to origin, hydrocarbon composition and use. To what characteristics of oil and gas were the parties to the deed referring when they said "other minerals"? Because there are as many, if not more, similarities between coal and oil and gas as there are dissimilarities, the rule of "ejusdem generis" cannot be applied to exclude coal from the term "other minerals" without a clear manifestation of the intent of the draftsmen.

It is further argued that the use of the words "with such easement for ingress, egress and use of surface as may be incidental or necessary to use of such rights" discloses that such rights were not intended to allow the grantor to completely destroy the surface and consequently destroy

its agricultural value by removing the coal by strip mining.

"Whether or not a conveyance or reservation of 'minerals' includes those which are not commercially workable by underground mining operations and are recoverable only by the open pit or strip method depends upon several factors. In determining this question, recourse must be had to all of the terms of the instrument, to the character of the land and of the minerals, and, in cases of ambiguities, to extrinsic evidence of the surrounding circumstances and other facts throwing light on the intention of the parties." Annotation, 1 A.L.R.2d 787 at 789.

First we must look to the terms of the deed itself. The relevant portion provides in part: "Excepting and reserving * * * *fifty per cent of* all right and title in and to any and *all* oil, gas and *other minerals in or under the* foregoing described *land with such easement for* ingress, egress and *use of surface as may be incidental or necessary to use of such rights.* * * *"* [Emphasis added.]

"* * * unless the language of the conveyance repels such a construction, as a general rule a grant of mines or minerals gives to the owner of the minerals the incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary in exploring, mining, removing, and marketing the minerals * * *. The incidental right of entering, occupying, and making such use of the surface lands as is reasonably necessary exists in the case of a reservation of mineral rights as well as a grant." 58 C.J.S. Mines and Minerals § 159(b), pp. 332–333. [See citations.]

█ The language in the instant case is clear, unambiguous, and without limitation. It severs the minerals from the surface of the land, retaining in the grantor the right to enter and use the surface for any purpose reasonably necessary to the use of his mineral rights. His rights are a fee simple estate in the minerals "in or under" the land in question. Northwestern Imp. Co. v. Morton County, 78 N.D. 29, 47 N.W.2d 543, 550 (1951). It is then reasonable to assume that the parties intended that the grantor should have the right to use the surface to whatever extent reasonably necessary to remove fifty per cent of "all oil, gas, and other minerals".

What means then would have been within the contemplation of the parties as reasonably necessary to remove the lignite coal in question? The North Dakota Legislative Research Committee in its 1955 report published pursuant to Chapter 54–35 of the North Dakota Century Code noted that:

"Official records show that coal has been mined in North Dakota since at least 1884. Prior to 1920 coal was mined almost exclusively by the underground methods. Since that time there has been a steady trend toward the use of strip mining methods and such trend progressed until 1953 when the last large underground coal mine was closed. Because of the lower costs and greater efficiency of the strip mining method, it seems probable that all future lignite mining operations of the State of North Dakota will be carried on by the stripping method." P. 40.

Star Drilling, Inc. has stated at page 5 of its brief that "At the time of the grant in question, coal was widely known to exist in this area * * *". It is reasonable to assume that the parties to the deed in question knew of the existence of lignite coal in the area and that strip mining was the best method of removing said coal and intended that the instrument reserve to the grantor fifty per cent of all the coal.

It is argued that the agricultural use of the land in question will be destroyed by the strip method of mining and that it therefore should not be allowed or found to be within the intention of the parties.

Our Legislature has foreseen this problem and dealt with it. In a 1969 law which provides for the reclamation of strip-mined lands, the Legislature has declared it to be the policy of the State "to provide, after surface mining operations are completed, for reclamation of affected lands to encourage productive use including * * * the planting of crops for harvest * * *". Section 1, Ch. 332, Session Laws 1969. In a 1973 amendment to this Act, our Legislature provided that it shall be the duty of the strip mine operator to "regrade the area to approximately the original contour or rolling topography unless a different topography shall be required for an intended higher use", and "spread topsoil or approved surface material within the permit area over the regraded area to a depth of two feet * * *". Section 5, Ch. 285, Session Laws 1973. Compliance with this law should result in restoration of surfaces temporarily disrupted by strip mining.

In construing the instrument to determine the intention of the parties, there is one further fact that should be noted. The instrument reads "all oil, gas and other minerals", which is the equivalent of saying "all oil, all gas, and all other minerals". In MacMaster v. Onstad, 86 N.W.2d 36, 41 (N.D.1957), this court had the opportunity to construe similar language. In that case Judge Burke said: "We do think there is significance in the fact the lease authorized the lessee to produce not simply oil and gas and other minerals but oil and gas and all other minerals. No word is more inclusive than 'all' and it is difficult to see why, if the parties intended a restricted construction to be placed upon the reference to other minerals, they should use a word so completely unrestricted in its meaning."

█ Upon analysis of the language in question it is our opinion that the words "all oil, gas and other minerals" were meant to include and do include lignite coal.

The next question we must consider is whether the "excepting and reserving" clause included in the 1943 limited warranty deed from The Federal Land Bank to the Emineths is within the purview of Sections 47–10–21 and 47–10–22 of the North Dakota Century Code. We think that it is.

Section 47–10–21 provides: "All deeds and transfers of real property in this state that *reserve* to the grantor the coal in said property shall contain an accurate description of the coal *reserved* to the grantor, its nature, length, width, and thickness. The coal *reserved* to the grantor shall be limited to such description. * * *" [Emphasis added.] N.D.C.C.

Section 47–10–22 provides: "Every deed and transfer of real property in this state which recites a *reservation* to the grantor of the coal deposits in said property, but which does not contain an accurate description of such deposits as required in section 47–10–21, shall be construed to transfer to the grantee named in such deed, all right, title, and interest to such property and all deposits of coal imbedded therein, notwithstanding such attempted *reservation*." [Emphasis added.] N.D.C.C.

In order to determine the limits of these statutes we must consider settled rules of statutory construction.

"Words used in any statute are to be understood in their ordinary sense, unless a contrary intention plainly appears * * *" Section 1–02–02, N.D.C.C.

"Words and phrases shall be construed according to the context and the rules of grammar and the approved usage of the language. Technical words and phrases and such others as have acquired a peculiar and appropriate meaning in law, or as are defined by statute, shall be construed according to such peculiar and appropriate meaning or definition." Section 1–02–03, N.D.C.C.

The Nebraska Supreme Court has defined a reservation as follows:

"A reservation is some new thing issuing out of what is granted. It creates a new right in the grantor from the subject of the conveyance, something which did not exist as an independent right before the grant and which is originated by it." Elrod v. Heirs, Devisees, etc., 156 Neb. 269, 55 N.W.2d 673, 675 (1952).

■■ Although the word "reservation" is confused with, and used interchangeably with, the word "exception", some courts have found a material difference between the two words. It has been said that while a reservation is, in effect, a regrant of the thing reserved, an exception operates to take something out of the thing granted which would otherwise pass. 26 C.J.S. Deeds § 137, pp. 993, 995, 996. Esbjornsson v. Buffalo Insurance Co., 252 Minn. 269, 89 N.W.2d 893, 896 (1958).

■ Notwithstanding that a distinction has been recognized between a reservation and an exception, it is often difficult to distinguish between an exception and a reservation in a deed. This is so because, in general, a reservation, like an exception, is something to be deducted from the thing granted, narrowing and limiting what would otherwise pass by the general words of the grant. Courts have therefore held that the terms are often used interchangeably or indiscriminately and are not conclusive as to the nature of the provision, and that the technical meaning will give way to the obvious intent, even though the technical term to the contrary was used. 26 C.J.S. Deeds § 137, pp. 996, 997.

The meaning of "reserve" in Section 47–10–21, N.D.C.C., and "reservation" in Section 47–10–22, N.D.C.C., may be discerned by examining the origin of those sections. When Chapter 304 of 1911 Session Laws was enacted the title read:

"AN ACT to Aid Assessors in Valuing Coal Deposits Reserved to Grantors by Providing That All Deeds and Transfers of Real Property, Which Reserves the Coal Deposits to the Grantor Shall Contain a Full Description of the Coal Deposits, so Reserved, its Length, Width, and Thickness."

A specific description would be as essential in an exception as in a reservation if it were to be an aid in assessment of property.

■ The pertinent language of the deed in this case reads:

"Excepting and reserving to the party of the first part and its successors and assigns fifty per cent of all right and title in and to any and all oil, gas and other minerals in or under the foregoing described land with such easement for ingress, egress and use of surface as may be incidental or necessary to use of such rights".

We believe that the words "excepting and reserving" bring the conveyance within the provisions of Sections 47–10–21 and 47–10–22, N.D.C.C.

■ Having so concluded, we must determine the consequences. The Bank contends that if the deed comes within those sections, they can have no legal effect because they are unconstitutional. In considering the constitutionality issue, we start with some basic rules we have applied in other cases.

"1. A law enacted by the Legislature is presumed to be constitutional, unless it is shown that it is manifestly violative of the organic law.

"2. The courts will construe statutes so as to harmonize their provisions with the Constitution if it is possible to do so, to the end that they may be sustained.

"3. Every presumption is in favor of the propriety and constitutionality of legislation, and improper motives in its enactment are never imputed to the Legislature.

\* \* \* \* \* \*

"5. Where a classification is reasonably necessary to effect the purposes of a law which is otherwise within the province of the Legislature to enact, the classification will not render the law repugnant to the Constitution.

\* \* \* \* \* \* "

State v. Miller, 129 N.W.2d 356, 357, 358, Syllabus ¶ 1, 2, 3, 5 (N.D.1964).

"2. State legislatures are presumed to have acted within their constitutional power despite the fact that, in practice, their laws result in some inequality.

"3. A statutory discrimination will not be set aside if any state of facts reasonably may be conceived to justify it.

\* \* \* \* \* \*

"5. Only invidious discrimination is prohibited by the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution.

\* \* \* \* \* \* "

State v. Gamble Skogmo, Inc., 144 N.W. 2d 749, 752, Syllabus ¶ 2, 3, 5 (N.D.1966).

In light of these rules, let us consider the contentions of the parties.

The Bank contends that Sections 47–10–21 and 47–10–22, N.D.C.C., are unconstitutional as a denial of equal protection of the laws and a grant of privileges and immunities because their application only to reservations of coal is discriminatory and grants privileges and immunities to those persons acquiring mineral rights to coal through direct conveyances. The Bank refers us to the following constitutional provisions:

"All laws of a general nature shall have a uniform operation." N.D.Const. § 11.

"No special privileges or immunities shall ever be granted which may not be altered, revoked or repealed by the legislative assembly; nor shall any citizen or class of citizens be granted privileges or immunities which upon the same terms shall not be granted to all citizens." N. D.Const. § 20.

" \* \* \* No State shall \* \* \* deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S.Const. amend. XIV, § 1.

Mr. Christman asserts that there is no evidence in the record that our Legislature, in enacting Sections 47–10–21 and 47–10–22, N.D.C.C., acted arbitrarily, unreasonably, or with intent to effect an unconstitutional purpose, or did not act in good faith, and that accordingly the statutes are not violative of any of the provisions of our State or Federal Constitutions.

█ In a 1964 decision of this court another statute was attacked as being unconstitutional, on the grounds that the classification created by the statute resulted in unequal treatment. In that case, we said:

" \* \* \* [M]erely because a statute distinguishes between citizens or classes of citizens does not make it unconstitutional. If a classification is reasonably necessary to effect the purposes of a law which is otherwise within the province of the Legislature to enact, the classification will not render the law repugnant to the Constitution." State v. Miller, 129 N.W.2d 356, 364 (1964).

Specifically, we were asked to determine the constitutionality of a law which required applicants for big-game hunting permits or licenses to go through a lottery system limiting them to one license for each species of big game for each four-year period but excepting owner operators and operators of farms, who were entitled to purchase one license for each farm unit in each consecutive season.

Section 20–08–03, N.D.C.C., was attacked as being in violation of the North Dakota Constitution in that it granted privileges and immunities to owner operators and op-

erators of farms which it did not grant to others.

Upholding the constitutionality of the law, we said:

"This statute must be considered in light of the great and urgent need of legislation for protection and conservation of our big game and in light of the important part that our farmers and ranchers have in protecting and preserving the game. The Legislature could very reasonably have found that big game could not be preserved and conserved without the cooperation of those upon whose lands the game found its food and shelter and reared its young. The privilege of receiving an annual big game license accorded the owner operators or operators of the farmstead units residing within the legal open areas where the game lives was undoubtedly intended as an inducement to farm and ranch operators to cooperate in the preservation and conservation of the game for the benefit of all the people of the state. This can hardly be said to be an arbitrary classification or one discriminatory to the defendant. As conservation practices necessitated the restriction of the big game harvest each year, it was not unreasonable for the Legislature to grant the operators a preferred status in receiving big game licenses." State v. Miller, 129 N.W.2d 356 at 364 (1964).

In other words, a conceivable state of facts justified the game law.

The classification established in Sections 47–10–21 and 47–10–22, N.D.C.C., distinguishes transfers of coal by direct grant from transfers of coal by reservation or exception. It places a burden upon the latter type of transfer that it doesn't place upon the former, that burden being that in the latter case the coal must be described accurately as to nature, in length, width and thickness, whereas in the former case it need not be so described.

In *Gamble Skogmo* we sustained the Sunday Closing Law which distinguished one business from another by permitting some businesses to operate on Sunday while prohibiting others. In sustaining the law we said:

"It would seem that a legislature could reasonably find that the Sunday sale of the exempted commodities was necessary either for the health of the populace or for the enhancement of the recreational atmosphere of the day—* * *

"The record is barren of any indication that this apparently reasonable basis does not exist, that the statutory distinctions are invidious, that local tradition and custom might not rationally call for this legislative treatment. * * *" State v. Gamble Skogmo, *supra*, 144 N.W.2d 749 at 758.

We concluded that there was a state of facts which conceivably could have justified the Legislature in passing the law notwithstanding that it distinguished one business from another.

This court has twice stricken laws which attempted to impose classifications for tax purposes which discriminated against mineral rights severed from the surface ownership.

In 1923 the Legislature passed an Act taxing minerals the ownership of which had been severed from the surface ownership. The material part read:

"Sec. 1. An annual state tax of three cents on each acre is hereby levied upon all deposits of lignite coal and minerals and all titles to coal and mineral underlying any and all lands, the ownership of which coal and minerals has been severed from the ownership of the overlying strata and the surface of the land. * * *" 1923 S.L., Ch. 319.

█ In an action to quiet title to certain lands subject to a tax lien which arose out of the application of the Act, the plaintiff contended that it was unconstitutional as a violation of the constitutional provisions requiring uniformity and equality.

Quoting from an earlier North Dakota case, Judge John Burke said:

> "The classification must be one based upon some reasonable grounds, some difference which bears a just and proper relation to the attempted classification and is not a mere arbitrary selection. It requires no argument to prove that the character of the ownership * * * affords no reasonable basis for classification." [Quoting from Gamble-Robinson Fruit Co. v. Thoresen, 53 N.D. 28, 204 N.W. 861, 42 A.L.R. 1039 (1925).] Northwestern Improvement Co. v. State, 57 N.D. 1, 220 N.W. 436, 439 (1928).

Applying the rule that a classification must be based upon reasonable grounds and comparing a tax based upon the character of the ownership of the minerals with a tax based upon the severance of the ownership of the minerals from the ownership of the surface, the court, in finding the latter tax unconstitutional, said:

> "It is just as unreasonable and arbitrary to provide a classification based upon the severance of ownership of the minerals from that of the surface. It is true that all owners of minerals severed from the surface are in the same class, but that is not a classification of property but of persons. The tax is not upon the person but on the property, and it is the property that must be placed in reasonable classes for the purpose of taxation. To be uniform property taxes must be laid with regard to the value, or some other characteristic of the property which justifies a classification. The tax in question is not uniform upon the same class of property in the taxing territory as required by section 176 of the Constitution and is therefore void." Northwestern Improvement Co. v. State, *supra*, 220 N.W. 436, 439, 440.

In 1947 the Legislature passed another law taxing minerals severed from the ownership of surface. It reads in part:

> "§ 1. *Privilege Tax Imposed.*] For the privilege of holding mineral rights in real property when severed from the surface rights therein by reservations in deeds conveying such surface rights without development thereof by mining operations, there is hereby imposed annually an excise tax of three cents per acre measured by the number of acres in the tract conveyed or in the rights reserved, in case such reservation in a reservation of mineral rights in or underlying a less acreage, in which case the lesser number of acres shall determine the tax.

> "When such mineral rights are developed by mining operations, such excise tax shall cease. This excise tax shall not apply to mineral leases held for development purposes." Ch. 340, S.L.1947.

In 1951 Northwestern Improvement Company brought an action to set aside certain tax liens claimed under this Act attacking the Act as being unconstitutional.

District Judge Ilvedson, writing for the court, noted that there were many mineral rights in Morton County and the State of North Dakota not created by reservations in deeds conveying the surface rights and that the holders of those mineral rights would escape the burden of this tax law. Holding the law unconstitutional, he said:

> "It is obvious to this court that the manner or method by which mineral rights are severed from the surface of the land cannot be made the sole basis of the classification of such mineral rights for taxation purposes. * * *" Northwestern Improvement Co. v. Morton County, 78 N.D. 29, 47 N.W.2d 543, 550 (1951).

If the manner or method by which mineral rights are severed from the surface cannot be the basis of a classification for taxation purposes, it is inconceivable that the method by which title to coal is acquired could be a basis for classification for assessment purposes or any other purpose.

The rules we applied in a 1968 opinion of this court, wherein we struck down the so-called "anti-corruption act", seem pertinent here.

"5. Sections 11 and 20 of the North Dakota Constitution and § 1 of the fourteenth amendment to the United States Constitution do not prohibit or prevent classification, provided such classification is reasonable for the purpose of legislation, is based on proper and justifiable distinctions considering the purpose of the law, is not clearly arbitrary, and is not a subterfuge to shield one class or to burden another or to oppress unlawfully in its administration.

"6. A proper classification for legislative purposes must embrace all who naturally belong to the class.

"7. Legislation cannot arbitrarily divide a class into two parts and constitute a different rule of law governing each of the parts." Melland v. Johanneson, 160 N.W.2d 107, 109, Syl. ¶ 5, 6, 7 (N. D.1968).

We can conceive of no reasonable basis for requiring that the nature, length, width and thickness of coal reservations be described when such a description is not required of grants of coal. It would seem that if the description was of value it would be so regardless of how title to the coal was acquired.

Accordingly, we conclude that the classification inherent in Sections 47–10–21 and 47–10–22, N.D.C.C., is unreasonable and the discrimination resulting therefrom is invidious. The sections therefore must fall as unconstitutional, being in violation of the equal protection clauses of Section 20 of the Constitution of North Dakota and Amendment XIV, Section 1, of the Constitution of the United States.

Notwithstanding that through inadvertence the SW¼ of Section 34, Township 142 North, Range 83 West, was omitted from the findings of fact, conclusions of law and order for judgment and from the judgment, through stipulation of the parties it is considered by this court to have been included therein; and, notwithstanding that the 111.09 acres owned by Minnkota Power Cooperative, Inc. was included in the findings of fact, conclusions of law and order for judgment and in the judgment, through stipulation of the parties the same is considered by this court not to have been included therein.

The judgment of the trial court with the stipulated corrections is affirmed.

KNUDSON, PAULSON, TEIGEN and VOGEL, JJ., concur.

VOGEL, J., was not a member of this Court at the time of submission of this appeal, he participated on the briefs filed in this case.